UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KRISTINE SULLIVAN-MESTECKY, individually
and as the beneficiary of the life insurance policy of
Kathleen Sullivan, deceased

        Plaintiff,

     -against-

VERIZON COMMUNICATIONS INC.,
PRUDENTIAL INSURANCE COMPANY OF
AMERICA, WELLS FARGO BANK, XEROX
COMPANY, and AON HEWITT COMPANY,

        Defendants.
------------------------------------------------------------------X

**FILED**
**CLERK**

7/7/2016 2:39 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

14-CV-1835 (SJF)(AYS)

**OPINION and ORDER**

FEUERSTEIN, District Judge:

On or about February 7, 2014, plaintiff Kristine Sullivan-Mestecky ("plaintiff"),

individually and as the beneficiary of the life insurance policy of Kathleen Sullivan ("Sullivan"),

deceased, commenced this action against defendants Verizon Communications Inc. ("Verizon"),

the Prudential Insurance Company of America ("Prudential"), Wells Fargo Bank ("Wells

Fargo"), Xerox Company ("Xerox") and Aon Hewitt Company ("Hewitt") (collectively,

"defendants"), in the Supreme Court of the State of New York, County of Nassau ("the state

court") seeking to recover damages under the doctrine of promissory estoppel and for defendants'

purported breach of contract, breach of a third-party beneficiary contract, tortious interference

with contractual relations, fraud, breach of fiduciary duty, "illegal evasion of insurance claims,"

negligent misrepresentation, breach of the covenant of good faith and fair dealing and violations

of New York Insurance Law § 4226 and New York General Business Law § 349.  On or about

March 21, 2014, Verizon, with the consent of all of the other named defendants, removed the

action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 on the basis, *inter alia*, that this Court has original jurisdiction under 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. On September 10, 2014, plaintiff filed an amended complaint against defendants asserting claims pursuant to Sections 404(a)(1), 502 and 503 of ERISA, 29 U.S.C. §§ 1104(a)(1), 1132 and 1133, and state law and/or federal common law seeking damages under the doctrine of promissory estoppel, and for defendants' alleged breach of contract, breach of third-party beneficiary contract, tortious interference with contractual relations, fraud and negligent misrepresentation.

Pending before the Court are defendants' motions to dismiss plaintiff's claims against them pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Prudential also seeks to strike certain allegations from the amended complaint as immaterial pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. For the reasons set forth below, Prudential's motion, and the joint motion of Verizon and Wells Fargo, are granted in part and denied in part; and the motions of Xerox and Hewitt are granted to the extent set forth herein.

---

[1] This case was initially assigned to the Honorable Joseph F. Bianco, United States District Judge. On June 12, 2015, after hearing oral argument on defendants' motions to dismiss, Judge Bianco recused himself from this case "in order to avoid any appearance of partiality," (Docket Entry ["DE"] 72), and the case was reassigned to the Honorable Joan M. Azrack, United States District Judge. (*Id.*) On July 23, 2015, Judge Azrack recused herself and this case was reassigned to me. (DE 73).

I.      BACKGROUND

        A.      Factual Allegations[2]

        Sullivan was employed by New York Telephone Company from approximately 1970

until approximately 1978, (Amended Complaint ["Am. Compl."], ¶¶ 37, 47-48), and, thus, was

entitled to certain employee benefits, including health insurance, dental insurance and life

insurance.  (*Id.*, ¶¶ 39, 44, 115).

        From in or about November 1977 until on or about November 14, 1984, Sullivan

received long-term disability ("LTD") benefits under the New York Telephone Long Term

Disability Plan (the "LTD Plan"), (Am. Compl., ¶¶ 41, 42, 49, 55, 58, 62, 64, 70), which was

administered by Prudential.  (*Id.*, ¶ 45).

        In or about 1984 or 1985, New York Telephone became part of NYNEX.  (Am. Compl., ¶

79).  In or about October 1992, "the NYNEX Director of Qualified Benefits Plan" sent Sullivan

correspondence, *inter alia*, advising her that as a "a long tem disability recipient and participant

in a qualified benefits plan[,] . . . she was entitled to the NYNEX Medical Expense [P]lan

["NYNEX ME Plan"] (at no cost) or an HMO[,] . . . ."  (*Id.*, ¶ 92).  Correspondence sent by

NYNEX to Sullivan between 1993 and 1997 also indicated that Sullivan was entitled to benefits

under the NYNEX ME Plan at no cost.  (*Id.*, ¶¶ 93-95, 97).  In addition, correspondence sent by

NYNEX to Sullivan in or about April 1996 advised Sullivan "that she was eligible to use the

_____

[2]  The factual allegations are taken from plaintiff's amended complaint and are assumed to be
true for the purposes of this motion.  They do not constitute findings of fact by the Court.  All
conclusory allegations are not entitled to the assumption of truth, *see Ashcroft v. Iqbal*, 556 U.S.
662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Faber v. Metropolitan Life Ins. Co.*, 648
F.3d 98, 104 (2d Cir. 2011); *Ruston v. Town Bd. of Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir.
2010), and, thus, have not been considered by the Court.

NYNEX mail service prescription plan." (*Id.*, ¶ 96).

In or about 1997, NYNEX was acquired by Bell Atlantic, (Am. Compl., ¶ 98), which "sent Ms. Sullivan a 1998 Personal Fact Sheet and annual enrollment for long-term disability benefits, and advised that [she] was entitled to [benefits under the NYNEX ME Plan] at no cost." (*Id.*, ¶ 99). However, in or about December 1997, Bell Atlantic sent a letter to Sullivan indicating, *inter alia*, without reference to any plan documents, "that she received benefits in error and that her medical insurance would stop as of January 31, 1998." (*Id.*, ¶ 100). Although the letter "did not provide for appeal procedures," Sullivan nonetheless appealed the denial of benefits. (*Id.*, ¶¶ 101, 102). "[I]n or about February 1998 Ms. Sullivan was advised that her appeal was granted and that her benefits, including, but not limited to, health insurance, dental coverage and life insurance would be reinstated." (*Id.*, ¶ 103). However, plaintiff does not allege that Sullivan received any employee benefits under her own name between 1998 and 2011.

In or about 1999 or 2000, Bell Atlantic acquired GTE to form Verizon. (Am. Compl., ¶ 106). "[F]rom February 1998 to 2005 Ms. Sullivan received health insurance and other benefits from NYNEX/Bell Atlantic and/or Verizon under a family plan in the name of Joseph Sullivan prior to his death."[3] (*Id.*, ¶ 104). "Upon the death of Joseph Sullivan in January 2005, Verizon unilaterally ended the family health insurance plan and other benefits Ms. Sullivan received." (*Id.*, ¶ 108). Nonetheless, after Sullivan "requested Summary Plan documents for her entitlement to health insurance, dental insurance, life insurance and other employee benefits," "her insurance and benefits continued at no cost until July 2005." (*Id.*, ¶ 109).

_____

[3] Sullivan's husband, Joseph Sullivan, "was also employed by New York Telephone/Verizon as a management employee." (Am. Compl., ¶ 40).

By letter dated October 9, 2005, which "was prepared and/or delivered by Hewitt," Verizon notified Sullivan that "her coverage was being terminated because she did not pay the premiums." (Am. Compl., ¶ 110). The letter did not reference the plan documents under which her claim for benefits was denied, but it did reference an appeals procedure. (*Id.*) In or about 2005, Ms. Sullivan filed a claim with Verizon "for denial of employee benefits and/or eligibility for benefits, including life insurance, health insurance, dental insurance and other employee benefits."[4] (*Id.*, ¶ 111).

---

[4] Although the amended complaint also conclusorily alleges that Sullivan filed her 2005 claim with "Verizon and/or the Plan administrator," (Am. Compl., ¶ 111), plaintiff does not identify who the plan administrator was for the "family plan" under which Sullivan had been receiving the employee benefits that were purportedly "unilaterally" terminated by Verizon, (*see id.*, ¶¶ 108, 113, 116), and the amended complaint is bereft of any factual allegations from which it may reasonably be inferred that any of the defendants were the plan administrator for that plan. Moreover, elsewhere in the amended complaint, plaintiff alleges that Sullivan "continued her claim *with Verizon* regarding the company's improper unilateral termination of her . . . benefits" from 2005 through 2011. (*Id.*, ¶ 113) (emphasis added). In addition, in a letter to defendants' attorneys dated August 27, 2014, upon which plaintiff relies in the amended complaint in support of her claim that "[d]efendants have a policy and practice of denying claims without regard to the plan documents and settlement agreements in their possession," (*see id.*, ¶¶ 257, 259), and which is, thus, integral to the complaint, plaintiff's counsel indicated, in relevant part:

> "It is Plaintiff's position that Mrs. Sullivan filed a claim in 2005 after her employee benefits were wrongfully denied *by Verizon*. As supported by the documents provided by Verizon, Mrs. Sullivan previously was denied benefits and had those benefits reinstated. In settlement of her claim for years of lost employee benefits, Mrs. Sullivan, in 2011, agreed to receive employee benefits, including a life insurance policy in excess of $700,000.00. Although Mrs. Sullivan had her benefits reinstated in 2011 after years of disputing her claims *with Verizon*, . . . Verizon claims that they are not in possession of any settlement agreement[,] . . . claims documents[] . . . [or] any documents demonstrating why Mrs. Sullivan was provided with a life insurance policy of approximately of [sic] $700,00.00 or how Mrs. Sullivan was compensated for years of being deprived of employee benefits."

(Declaration of Lorraine P. Grande in Support of Verizon's Motion to Dismiss ["Grande Decl."], Ex. 2) (emphasis added). The principle that factual allegations in a complaint must be accepted as true on a motion to dismiss "does not apply to general allegations that are contradicted by

"From 2005 through 2011, Ms. Sullivan continued her claim *with Verizon* regarding *the company's* improper unilateral termination of her health insurance, life insurance and other benefits." (Am. Compl., ¶ 113) (emphasis added). "In or about 2011 or prior thereto, Verizon . . . agreed to provide Ms. Sullivan a life insurance policy in the amount of $679,700.00[,] . . . [and] additionally agreed to provide Ms. Sullivan a life insurance policy in the amount of $35,000.00[,]" (*id.*, ¶ 114), at no cost, (*id.*, ¶ 118), "in settlement of [her] claim that [it] improperly, unilaterally terminated her health insurance, life insurance and other employee benefits after the death of her husband in January 2005."[5] (*Id.*, ¶ 116).

---

more specific allegations in the [c]omplaint[,]" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014) (quotations and citation omitted), or by documentary evidence properly considered on a motion pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

[5]   The amended complaint conclusorily alleges that the purported settlement agreement was made by "Verizon and/or Prudential and/or Hewitt and/or the Plan Administrator and/or Third Party Administrator." (Am. Compl., ¶ 114; *see also id.*, ¶ 127 ["Upon information and belief, Verizon and/or Hewitt made clear and unambiguous representations to Ms. Sullivan that a policy in the amount of $679,700.00 would be provided in settlement of [her] claims for years of being denied employee benefits."]; *id.*, ¶ 131 ["Upon information and belief, Verizon and/or Hewitt and/or Prudential made representations that a $679,700.00 life insurance policy would be provide [sic] despite having actual knowledge that such policy would later be denied."]). However, the amended complaint does not identify, *inter alia*, who the plan administrator was for the "family plan" under which Sullivan had been receiving the employee benefits that were purportedly "unilaterally" terminated by Verizon, nor what Prudential's or Hewitt's connection was to that plan, if any. Absent any factual allegations regarding the specific actions taken, or representations made, by Prudential, Hewitt and the unidentified administrators, the amended complaint fails to provide them with fair notice of plaintiff's specific claims against them.

Moreover, "[t]o satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989); *accord Nakahata v. New York-Presbyterian Hosp. Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013). "When a claim is brought against multiple defendants, Rule

Plaintiff alleges, *inter alia*, (1) that "Hewitt and/or Verizon failed to secure a life insurance policy for Ms. Sullivan as represented[,]" (Am. Compl., ¶ 125); and (2) that Hewitt (a) "failed to maintain and/or incorrectly reported that Ms. Sullivan had a life insurance policy in the amount of $679,700.00 and $35,000.00[,]" (*id.*, ¶ 180; *see also id.*, ¶ 198), (b) "failed to maintain accurate employee records relative to [her] eligibility for employee benefits[,]" (*id.*, ¶ 123), (c) "negligently inputted information and/or maintained records related to [her] eligibility for life insurance benefits[,]" (*id.*, ¶ 124), and (d) "caused a breach of" the life insurance policy and/or settlement agreement "by destroying and/or failing to maintain records of such agreement." (*Id.*,

---

9(b) requires that a plaintiff differentiate his allegations as to each defendant and inform each defendant separately of the specific allegations." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011); *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 517 (W.D.N.Y. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant [] and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (quotations, alterations and citations omitted)); *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) ("The requirements of Rule 9(b) are not satisfied by a complaint in which defendants are clumped together in vague allegations." (quotations and citation omitted)). Therefore, plaintiff's unspecified allegations against multiple defendants do not satisfy Rule 9(b) of the Federal Rules of Civil Procedure.

Furthermore, although a fraud claim may plead scienter generally, "the plaintiff must still allege 'facts that give rise to a strong inference of fraudulent intent.'" *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "[T]he relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations." *Shields*, 25 F.3d at 1128 (quotations and citations omitted). The amended complaint is bereft of any factual allegations from which it may reasonably be inferred that Prudential and Hewitt acted with the requisite fraudulent intent, particularly since, *inter alia*, unlike Verizon, they received no apparent benefit from Sullivan's settlement of her 2005 claim against Verizon and there are no circumstances alleged indicating conscious misbehavior or recklessness by those defendants. *See generally Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) ("The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." (quotations and citations omitted)).

¶ 179).

On or about June 20, 2011, Sullivan received a Verizon "Retirement Enrollment Worksheet" (the "Worksheet") that was prepared and delivered by Hewitt. (Am. Compl., ¶ 132; *see also id.*, ¶ 134). The Worksheet indicates, *inter alia*, (a) that Sullivan had two (2) options with respect to "Retiree Life" insurance, *i.e.*, "Option 1 is a '1 x Pay' with a coverage amount of $679,700 at a price of $ 0.00[,] [and] Option 3 [sic] is '$50,000' with a coverage amount of $35,000 and a price of $0.00[,]" (*id.*, ¶¶ 132, 134); and (b) that "[i]f your life insurance coverage is more than $50,000, an amount of taxable imputed income will appear on your paycheck statements and W-2 earnings statement at the end of the year." (*Id.*, ¶ 132; *see also* (Declaration of April A. Otterberg in Support of Hewitt's Motion to Dismiss ["Otterberg Decl."], Ex. 2 at 4).

The Worksheet also indicates, in relevant part:

> "As a new retiree, you'll need to enroll for your benefits by July 21, 2011. If you fail to enroll by that date, you'll be assigned default coverage, which may not meet your needs. If you want to make changes or cancel your request to retire, you must do so through the Verizon Benefits Center. The coverage you elect will go into effect on July 1, 2011."

(Otterberg Decl., Ex. 2 at 1). In addition, the Worksheet indicates: "Call the Plan Administrator (in care of the Verizon Benefits Center . . .) for more information[,]" (*id.*, Ex. 2 at 5), thus indicating that the life insurance benefits were being provided to Sullivan, upon her enrollment therefor, as part of an employee benefits plan.

According to plaintiff, Sullivan selected both options for life insurance benefits "and paid taxes based upon th[e] taxable imputed income." (Am. Compl., ¶ 133). Specifically, "Verizon, through its agent Wells Fargo" sent Sullivan W-2s for the years 2011 and 2012 reporting the cost of the group-term life insurance as taxable income in the amount of four thousand seven hundred

ninety-eight dollars and thirty-one cents ($4,798.31) and twelve thousand sixty-eight dollars and seventy-two cents ($12,068.72), respectively.  (*Id.*, ¶¶ 154, 155).

Plaintiff alleges, "[u]pon information and belief," that in or about 2011, "a retiree life policy in the amount of $679,000.00 [sic] was issued to Ms. Sullivan[,]" (Am. Compl., ¶ 135); that "Verizon and/or Wells Fargo and/or Hewitt and/or Prudential made [] clear and unambiguous promise[s] that Ms. Sullivan had secured [] life insurance polic[ies] in the amount of $679,700.00[] . . . [and] $35,000.00[,]" (*id.*, ¶¶ 136-137); and that "Prudential issued a life insurance policy to Ms. Sullivan as named insured[,]" (*id.*, ¶ 138), under Group Contract Number 50902, (*id.*, ¶ 139), which designated plaintiff as a beneficiary thereof.  (*Id.*, ¶ 142).  Plaintiff further alleges, "[u]pon information and belief," that defendants both (1) "provided Ms. Sullivan with a certificate of insurance representing a policy in the amount of $697,700.00 and/or $35,000,000 [sic] and/or $582,000.00[,]" (*id.*, ¶ 150); and (2) "neglected to provide Ms. Sullivan with the required certificate of insurance."  (*Id.*, ¶ 151).

On July 3, 2011 and December 20, 2011, respectfully, Verizon sent Sullivan a "Retirement Confirmation of Enrollment" (the "Confirmation of Enrollment") and a "Confirmation of Coverage on Demand," ("the Confirmation of Coverage"), both of which were "prepared and/or delivered" by Hewitt.  (Am. Compl., ¶¶ 140, 152; *see also* Otterberg Decl., Ex. 3 at 2).  The Confirmation of Enrollment provides, in relevant part:

> "This statement confirms your benefit choices and prices.  Your current family coverage information and the prices that you agreed to are also provided.  These elections will begin on July 1, 2011 and remain in effect *until the end of the plan year*, unless a qualified change in status occurs. . . ."

(Otterberg Decl., Ex. 3 at 1) (emphasis added).  The Confirmation of Enrollment indicates, in

relevant part, that Sullivan's "Coverage for 2011" included "Retiree Life Insurance" under "Option 1– 1 x Pay" at an annual price of "$0.00." (*Id.*; *see also* Am. Compl., ¶ 140).

The Confirmation of Coverage indicates, in relevant part, that as of December 19, 2011, Sullivan was afforded "Retiree Life" insurance coverage under "Option 1– 1 x Pay– $679,700" at an annual price of "$0.00." (Otterberg Decl., Ex. 5 at 1; *see also* Am. Compl., ¶ 152).

By letter dated December 1, 2011, Prudential advised Sullivan, *inter alia*, that the amount of her life insurance "coverage under the Verizon Communications Inc. Basic and/or Supplemental Life insurance coverage program[] [would] decrease [by $97,100.00] effective January 1, 2012[,]" but she was "eligible to convert the decreased amount to a Prudential individual life insurance policy without furnishing medical evidence of insurability." (Am. Compl., ¶ 141; *see* Declaration of Christopher F. Mestecky in Opposition to Defendants' Motions to Dismiss ["Mestecky Decl."], Ex. 6 at 8). Plaintiff alleges that Sullivan "detrimentally relied upon the representations from Defendants that she had $679,700.00 in life insurance when she declined to convert such coverage." (Am. Compl., ¶ 145).

On or about December 20, 2011, Sullivan received a Verizon "Beneficiary Confirmation Notice" that was prepared and/or delivered by Hewitt, which, *inter alia*, designated plaintiff as the primary beneficiary of Sullivan's "Retiree Life" insurance benefits. (Am. Compl., ¶ 153; *see also* Otterberg Decl., Ex. 4). Plaintiff alleges that Sullivan advised her "that but for obtaining insurance coverage through Verizon she would have obtained at least the same amount of coverage from another insurance source[,]" (*id.*, ¶ 163); and that "[b]ased upon the representation from her mother and Verizon and/or Hewitt and/or Prudential and/or Wells Fargo that [Sullivan] had obtained the above referenced life insurance policy(s), [she] permitted her mother to reside in

10

her residence rent-free[;] . . . financially supported her mother and paid her debts until her death[;] . . . [and] decided to take and/or continue an unpaid leave of absence from work." (*Id.*, ¶ 164; *see also id.*, ¶¶ 165-167).

In or about October 2012, Verizon sent Sullivan a letter informing her of a "change [Verizon was] making regarding the funding and payment of [her] pension benefit from the Verizon Management Pension Plan ["the Pension Plan"][,]" (Am. Compl., ¶ 168) (brackets in original), and indicating, *inter alia*, that "[o]n July 1, 2013, the issuer of your check or direct deposit will change from Wells Fargo Bank to Prudential." (*Id.*) (brackets in original). Plaintiff alleges, "[u]pon information and belief, [that] at all times prior to July 1, 2013, and relevant to this matter, Verizon had a contract with Wells Fargo to administer the [Pension Plan]." (*Id.*, ¶ 169).

Sullivan died on November 17, 2012. (Am. Compl., ¶ 171). From 2011 until her death, Sullivan was a participant in the Verizon Group Life Insurance Plan for New York and New England Associates ("the GLI Plan"), (*id.*, ¶ 33), of which plaintiff was a named beneficiary. (*Id.*, ¶ 36). Prudential became the insurer and claims administrator for the GLI Plan, effective January 1, 2011.

When plaintiff contacted the Verizon Benefits Center two (2) days after Sullivan's death, an "employee and/or agent informed [her] that Ms. Sullivan has a life insurance/death benefit in the amount of $582,000.00[] . . . [and] that Verizon's benefits were handled by Hewitt[,]" (Am. Compl., ¶ 172), and "confirmed to Plaintiff and the funeral home that Plaintiff [sic] had a policy

in excess of the cost of the funeral expenses."[6] (*Id.*, ¶ 173). Accordingly, "Plaintiff authorized the payment of a funeral in excess of $11,000.00[;] . . . took on additional debt[;] . . . [and] undertook other financial obligations related to her mother." (*Id.*, ¶ 174).

Plaintiff sent Sullivan's death certificate "to Verizon and/or Hewitt on or about November 27, 2012." (Am. Compl., ¶ 175). On December 16, 2012 and December 31, 2012, plaintiff called "Verizon and/or Hewitt" regarding Sullivan's life insurance. (*Id.*, ¶¶ 176-177). During the December 31, 2012 call, "an employee of Defendants[] . . . represented to Plaintiff that the $582,000 claim was approved but that [she] would have to wait for payment because the Third Party Administrator was changing from Hewitt to Xerox as of January 1, 2013." (*Id.*, ¶ 177). Plaintiff alleges, *inter alia*, (1) that Hewitt breached the life insurance policy and/or settlement agreement "by failing to authorize payment of the life insurance proceeds as represented[,]" (*id.*, ¶ 179); and (2) that "when transferring records to Verizon and/or Xerox, Hewitt and/or Verizon knowingly misrepresented the amount of life insurance policy due to Ms. Sullivan[] . . . with intent to defraud Plaintiff of life insurance proceeds." (*Id.*, ¶ 182; *see also id.*, ¶ 235).

On or about January 2, 2013, "a payment of $11,380 was made for the funeral expenses of Ms. Sullivan by Prudential and/or Verizon," that referenced Group Contract Number 50902. (Am. Compl., ¶ 184; *see also id.*, ¶ 185). On or about January 5, 2013, plaintiff "received a check from Prudential and/or Verizon in the amount of $20, which purportedly represented the

---

[6] Although plaintiff conclusorily alleges that "Verizon Benefits Center and/or Hewitt and/or Prudential confirmed . . . that [Sullivan] had a policy in excess of the cost of the funeral expenses[,]" (Am. Compl., ¶ 173), she does not allege, *inter alia*, that she ever actually contacted Hewitt or Prudential; when she did so; with whom she spoke, etc.

remains of the life insurance/death benefit after funeral expenses."[7] (*Id.*, ¶ 185). When plaintiff subsequently called the Verizon Benefits Center, she "was advised that benefits for Verizon were now handled by Xerox." (*Id.*, ¶ 186). Upon contacting Xerox, she "was told by a Xerox employee that it was not in possession of any documents relating to Ms. Sullivan's life insurance/death benefit." (*Id.*)

On or about January 7, 2013, plaintiff "contacted Verizon, Prudential and Xerox to inquire as to why she had not received the full amount of the life insurance benefit proceeds[,]" and was told by "[a] representative from Defendants . . . that the $20 paid to [her] represented the amount due after $11,380 was sent to . . . the funeral home for Ms. Sullivan." (Am. Compl., ¶ 203). In addition, when plaintiff contacted Verizon on that date, "Verizon redirected [her] to an employee from Defendant Xerox." (*Id.*, ¶ 204). When plaintiff contacted the employee from Xerox, that employee "misrepresented that she was not aware of Plaintiff's claim and did not assist [her]." (*Id.*)

Plaintiff contacted Prudential and Verizon "on several occasions" between January 8, 2013 and January 11, 2013, but they "were not able to offer any explanation as to why [she] did not receive the correct life insurance payout[,] . . . [and] did not advise [her] that her claim for benefits was either denied or appealable." (Am. Compl., ¶ 205). In addition, "Verizon again transferred Plaintiff to agents of Xerox." (*Id.*)

On January 14, 2013, plaintiff contacted "Verizon and/or Xerox" and was advised "that a claim was being reviewed." (Am. Compl., ¶ 207). On January 15, 2013, at the request of

---

[7] Thus, the representations by the "Verizon Benefits Center and/or Hewitt and/or Prudential" purportedly "confirm[ing] . . . that [Sullivan] has a policy in excess of the cost of the funeral expenses[,]" (Am. Compl., ¶ 173), were not, in fact, false.

"[d]efendants," plaintiff faxed a copy of Sullivan's 2011 W-2 from Verizon to the Verizon

Benefits Center and "referenced [it] as a request for 'Supplementary Life Insurance Above and

Beyond." (*Id.*, ¶¶ 207, 208, 210). On or about January 17, 2013, plaintiff sent another fax "to

Prudential/Verizon Benefits Center" about Sullivan's 2011 W-2 from Verizon. (*Id.*, ¶ 211).

On or about January 25, 2013, after receiving no response to her faxes, plaintiff contacted

"Verizon and/or Xerox and again spoke with a representative[,] . . . [who] stated that they were

unable to provide a response as to why the correct amount of life insurance proceeds had not

been paid." (Am. Compl., ¶ 215). Plaintiff received no response to her attempts to contact

"Verizon, Prudential and/or Hewitt and/or Xerox" between January 28, 2013 and January 30,

2013 "to inquire about the status of her claim for the life insurance benefits . . . ." (*Id.*, ¶ 216).

When she again contacted "Verizon and/or Xerox" on January 31, 2013, they "again had no

information as to the status of [her] claim, nor was [she] advised that her claim was denied[,]"

(*id.*, ¶ 217); and she was advised to "contact Prudential regarding her claim." (*Id.*, ¶ 218).

When plaintiff contacted Prudential on or about February 1, 2013, she "was advised by a

representative at Prudential that Prudential was not in possession of information regarding a

policy in excess of $580,000.00[;] . . . that Xerox had represented that they were not in

possession of any such documents[;]" and that she should "contact Hewitt directly regarding

th[e] matter." (Am. Compl., ¶ 221). According to plaintiff, "Prudential misrepresented its lack

of documents." (*Id.*; *see also id.*, ¶ 235).

"In or about February 2013, Plaintiff contacted Hewitt with no response." (Am. Compl.,

¶ 222).

On or about February 11, 2013, Plaintiff again contacted Prudential and was advised that

the matter was being referred to a supervisor at both Prudential and Verizon. (Am. Compl., ¶¶ 223, 224). "Prudential and/or Verizon again requested Plaintiff provide the W-2s[,]" which she did. (*Id.*, ¶ 224).

Plaintiff attempted to contact the Verizon supervisor on a daily basis from on or about February 11, 2013 until on or about February 15, 2013. (Am. Compl., ¶¶ 225-229). When the Verizon supervisor finally contacted plaintiff on or about February 15, 2013, he "made a misrepresentation . . . that his computer was not showing any information pertaining to [her] or Ms. Sullivan[,]" and advised that he was "looking into the W2 for Ms. Sullivan . . . [and] that Hewitt had a 'corrupt file' related to Plaintiff and Ms. Sullivan, which could be causing the lack of information." (*Id.*, ¶ 230).

In or about March 2013, "Verizon, through its agent Wells Fargo," sent Sullivan "altered/amended" W-2s for 2011 and 2012 "that contained income of $0.00." (Am. Compl., ¶¶ 237, 240; *see also id.*, ¶ 236).[8]

Defendants have refused plaintiff's (1) demand for "payment of the outstanding life

---

[8] Plaintiff's conclusory allegations that, "[u]pon information and belief, . . . Verizon and/or Wells Fargo and/or Prudential and/or Hewitt and/or Xerox authorized the 2011 amended W-2[,]" (Am. Compl., ¶ 238), and "Verizon and/or Prudential and/or Hewitt and/or Xerox authorized the 2012 amended W-2," (*id.*, ¶ 242), "to conceal the representations made to Ms. Sullivan while she was alive[,]" (*Id.*, ¶¶ 239, 241), are not entitled to the assumption of truth. Similarly, plaintiff's allegations (1) that "Verizon and/or Hewitt and/or Prudential failed to produce and/or destroyed or corrupted records to conceal the alleged error of Hewitt [in failing to maintain and/or incorrectly reporting that Sullivan had a life insurance policy in the amount of $679,700.00 and $35,000.00]," (*id.*, ¶ 181); (2) that "Verizon and/or Xerox failed to produce and/or destroyed or corrupted records or misrepresented that no records existed to conceal the alleged error of Hewitt or Verizon[,]" (*id.*, ¶ 199; *see also id.*, ¶ 235); (3) that "Xerox engaged in this conduct to promote the objective of and/or at the directive of its new employer Verizon[,]" (*id.*); and (4) that "when reported to Plaintiff as to records available, Xerox and/or Verizon knowingly misrepresented the amount of life insurance policy due to Ms. Sullivan[,]" (*id.*, ¶ 200; *see also id.*, ¶ 235), are also conclusory and not entitled to the assumption of truth.

insurance payment[,]" (Am. Compl., ¶ 214); and (2) requests for "documentation pertaining to the life insurance policy of Ms. Sullivan and plan documents[.]" (*Id.*, ¶ 213; *see also id.*, ¶¶ 231-234). Plaintiff alleges, "[u]pon information and belief," *inter alia*, (1) that "Xerox and/or Verizon," (a) "failed to maintain accurate employee records relative to Ms. Sullivan's eligibility for employee benefits[,]" (*id.*, ¶ 193), and (b) "negligently inputted information and/or maintained records related to Ms. Sullivan's eligibility for life insurance benefits[,]" (*id.*, ¶ 194); and (3) that Xerox (a) "caused a breach of" the life insurance policy and/or settlement agreement "by failing to maintain records of such agreement[,]" (*id.*, ¶ 179); and (b) breached those agreements "by failing to authorize payment of the life insurance proceeds as represented." (*Id.*, ¶ 197).

"On or about July 22, 2014, Verizon represented that in 2011 [] Sullivan was enrolled in the ["the GLI Plan"][,]" (Am. Compl., ¶ 249); and that "the Verizon Group Life Insurance Plan for New England Associates and Summary Plan description ["SPD"] for the [GLI Plan] was applicable to Plaintiff's claims." (*Id.*) Plaintiff alleges, *inter alia*, (1) that "[b]y denying [her] claim for life insurance benefits in January 2013 without review or possession of plan documents or other relevant documents, Verizon and/or Xerox and/or Prudential predetermined a claim denial and acted in bad faith[,]" (*id.*, ¶ 260); and (2) that "[b]y denying a claim for benefits without issuing a decision letter with appeal procedures, . . . [and] failing to provide requested documents relative to Plaintiff's claim for benefits, . . . Verizon and/or Xerox and/or Prudential violated the employee benefits plan and acted in bad faith." (*Id.*, ¶¶ 261-262).

On or about July 28, 2014, plaintiff "sent correspondence to the Verizon Plan Administrator and Chairperson of the Verizon Employee Benefits Center ["VEBC"] requesting

Plan documents, life insurance documents and other relevant documents to Plaintiff's claim[,] . . . [and] confirmation of Ms. Sullivan's life insurance policy." (Am. Compl., ¶ 250; *see* Grande Decl., Exs. 4 and 5). By letter dated August 7, 2014, Verizon "verifi[ed] that . . . Sullivan has Retiree basic group life insurance in the amount of $679,700.00 has no cash value and is payable upon death." (*Id.*, ¶ 253) (emphasis omitted). However, in subsequent letters, dated August 18, 2014 and August 27, 2014, respectively, counsel for Verizon indicated, *inter alia*, that the August 7, 2014 letter was sent in error and should be disregarded. (*Id.*, ¶¶ 254, 256). Plaintiff alleges, *inter alia*, that "[b]y stating that the August 7, 2014 correspondence was sent in error, upon information and belief, . . . Verizon and/or Xerox have predetermined a denial of Plaintiff's claim." (*Id.*, ¶ 263).

On or about August 21, 2014, plaintiff received correspondence from Verizon's counsel, sent "on behalf of the Plan Administrator[,]" responding to her July 22, 2014 and July 28, 2014 letters and providing her with copies of the following documents: "the summary plan description 'V-B-AR-N-L-1032 1/07'" (the "2007 SPD"); the GLI Plan; a "'General Services Agreement Between Verizon Corporate Services Group Inc. and the Prudential Insurance Company of America' [the "Verizon/Prudential GSA"] [;] the 'Verizon Communications Inc. Group Contract GM-50902-DE Wireline North Associates' [the "Group Contract"][;] and benefit documents relevant to [] Sullivan maintained by Verizon and/or its benefit plans." (Am. Compl., ¶ 255; *see* Grande Decl., Ex. 6). In addition, Verizon's counsel advised plaintiff, *inter alia*, (1) that she "intend[ed] to consult with Hewitt and Xerox regarding the production of third party agreements with each of [them] [and] . . . anticipate[d] producing such third party agreements following such consultation[;]" (2) that by copy of that letter to Hewitt's counsel, she was requesting Hewitt to

reply directly to plaintiff regarding her requests for documents prepared by Hewitt and for "settlement agreements and related documents;" (3) that she conducted a search for the settlement agreements and related documents, but her search "to date" revealed no such settlement agreement; and (4) that by copy of that letter to Prudential's counsel, she was requesting that Prudential reply directly to plaintiff regarding her request for documents and correspondence related to the December 1, 2011 correspondence from Prudential. (Grande Decl., Ex. 6). Verizon's counsel further indicated that if plaintiff believed that Verizon had "failed to provide documents required to be produced by section 104(b)(4) of ERISA, [she was to] . . . identify and provide the authority and/or analysis[] [for] the Plan Administrator [to] review . . . ." (*Id.*) According to plaintiff, Verizon failed to provide "documents related to specific Verizon documents which confirmed that Plaintiff had a policy in excess of $600,000.00[,] . . . [and] the collective bargaining agreement in place at the time of Ms. Sullivan's employment."[9] (Am.

---

[9]     By letter dated October 2, 2014, Verizon's counsel provided a further response to plaintiff's request for documents (a) indicating, *inter alia*, that "Verizon ha[d] consulted with Hewitt and Xerox regarding the production of [its] administrative service agreements with each of [them]" and that "Xerox ha[d] raised certain concerns regarding the production of the agreement between Verizon and Xerox[,] [which] Verizon [would] continue to work diligently to address. . . ," (Grande Decl., Ex. 7), and (b) providing the following additional documents: "1) the 2001 and 2009 administrative services agreements between Verizon and Hewitt; 2) the March 6, 2006 amendment concerning life insurance benefits administration; and 3) the April 1, 2013 TBA Limited License Agreement." (*Id.*)

By letter dated October 23, 2014, Verizon's counsel, "[o]n behalf of the Plan Administrator," (a) provided two (2) additional documents to plaintiff, *i.e.*, "the 'Collective Bargaining Agreement between New York Telephone Company and Empire City Subway Company (Limited) and Communications Workers of America AFL-CIO District One Effective August 7, 1977' and the 'Revised Wage Progression Schedules[,]'" and (b) indicated, *inter alia*, that if plaintiff believed that Verizon had "failed to provide documents required to be produced by section 104(b)(4) of ERISA, . . . [she was to] identify and provide the authority and/or analysis[] [for] the Plan Administrator [to] review . . . ." (Grande Decl., Ex. 8).

Compl., ¶ 255).

      B.      Procedural History

On or about February 7, 2014, plaintiff, individually and as the beneficiary of the life insurance policy of Sullivan, commenced this action against defendants in the Supreme Court of the State of New York, County of Nassau seeking to recover damages under the doctrine of promissory estoppel and for defendants' purported breach of contract, breach of a third-party beneficiary contract, tortious interference with contractual relations, fraud, breach of fiduciary duty, "illegal evasion of insurance claims," negligent misrepresentation, breach of the covenant of good faith and fair dealing and violations of New York Insurance Law § 4226 and New York General Business Law § 349. On or about March 21, 2014, Verizon, with the consent of all of the other named defendants, removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 on the basis, *inter alia*, that this Court has original jurisdiction under 28 U.S.C. § 1331 and Section 502 of ERISA, 29 U.S.C. § 1132.

On September 10, 2014, plaintiff filed an amended complaint against defendants asserting the following claims: (1) to recover benefits pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) ("Count I"); (2) for (a) purported equitable relief pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), for defendants' breach of their fiduciary duties under Section 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), and (b) relief for defendants' breach of fiduciary duty under state law ("Count II"); (3) for relief under Section 503 of ERISA, 29 U.S.C. § 1133 ("Count III"); (4) to recover statutory penalties under Section 502(c) of ERISA, 29 U.S.C. § 1132(c) ("Count IV"); and (5) to recover

damages under state law and/or federal common law under the doctrine of promissory estoppel ("Count V"), and for defendants' alleged breach of contract ("Count VI"), breach of a third-party beneficiary contract ("Count VII"), tortious interference with contractual relations ("Count VIII"), fraud ("Count IX," "Count X" and "Count XI"), and negligent misrepresentation ("Count XII").

Defendants now move to dismiss plaintiff's claims against them pursuant to Rule 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and Prudential also moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike certain allegations from plaintiff's amended complaint as immaterial.

II.     DISCUSSION

A.      Prudential's Motion to Strike

Prudential moves to strike the approximately fifty (50)-paragraphs of allegations in the amended complaint relating to Sullivan's alleged participation in the LTD Plan and Pension Plan on the basis that they have nothing "to do with the life insurance policy issued to [] Sullivan in 2011, which is the subject of this action." ("[Prudential's] Memorandum of Law in Support of its Motion to Dismiss . . . and [to] Strike Immaterial Allegations . . ." ["Prudential Mem."], at 22). According to Prudential,"[i]t would . . . be contrary to the purposes of FRCP [sic] 8(a)(2) to require [it] to respond to th[ose] immaterial allegations . . ., or require the Court to parse through them in the course of this litigation . . . ." (*Id.* at 23).

Plaintiff contends, *inter alia*, that the challenged allegations "are necessary to provide relevant background explaining how Ms. Sullivan came to be entitled to specific employee

20

benefits above and beyond those of other similarly situated employees as the result of the

Settlement Agreement . . . [and] Prudential's involvement in this matter." ("Plaintiff's

Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended

Complaint" ["Plf. Opp."] at 99). According to plaintiff, the "factual background describing Ms.

Sullivan's ongoing disputes with her employer with regard to her benefits provides the context

necessary to explain how she entered into the Settlement Agreement which caused her to be

entitled to the life insurance policy which is the subject of the instant litigation . . . ." (*Id.*, at 99-

100).

Rule 8(a) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a]

pleading that states a claim for relief must contain: . . . a short and plain statement of the claim

showing that the pleader is entitled to relief[.]" "The statement should be plain because the

principal function of pleadings under the Federal Rules is to give the adverse party fair notice of

the claim asserted so as to enable him to answer and prepare for trial[,] . . . [and] short because

unnecessary prolixity in a pleading places an unjustified burden on the court and the party who

must respond to it because they are forced to select the relevant material from a mass of

verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quotations, brackets and

citations omitted).

"When a complaint does not comply with the requirement that it be short and plain, the

court has the power, on its own initiative or in response to a motion by the defendant, to strike

any portions that are redundant or immaterial[.]" *Salahuddin*, 861 F.2d at 42 (citing Fed. R. Civ.

P. 12(f)); *accord Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Nonetheless, "courts

should not tamper with the pleadings unless there is a strong reason for doing so[,]" *Lipsky v.*

*Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976), and a Rule 12(f) motion to strike should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.*; *see also Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 132 (E.D.N.Y. 2015) ("Although Rule 12(f) motions are left to the district court's discretion, . . . they are generally disfavored and granted only if there is a strong reason to do so[.]" (quotations, brackets and citations omitted)).

"An allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quotations and citation omitted); *see also Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) ("'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." (quotations and citation omitted)). Thus, "[t]o prevail on a motion to strike, a party must show that: (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014); *accord Landesbank Baden-Württemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014); *see also Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 511 (S.D.N.Y. 2013) ("Although motions to strike are generally disfavored, allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." (quotations and citation omitted)).

Although the allegations challenged by Prudential ultimately may not be relevant or

admissible at trial, the Second Circuit has cautioned that courts generally should refrain from striking "a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893. Accordingly, and since, *inter alia*, Prudential has not demonstrated any prejudice to it resulting from leaving the challenged allegations in the amended complaint at this stage of the proceedings, the branch of Prudential's motion seeking to strike certain allegations in the amended complaint as immaterial pursuant to Rule 12(f) of the Federal Rules of Civil Procedure is denied.

### B.      Motions to Dismiss

#### 1.      Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955). "Factual allegations must be enough to raise a right to relief above the

speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1959.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S. Ct. 1937. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*; *see also Ruston*, 610 F.3d at 59.

Nonetheless, a plaintiff is not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-1 (2d Cir. 2010); *accord Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 729-30 (2d Cir. 2013). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In deciding a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters

of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 715, 190 L. Ed. 2d 441 (2014). The amended complaint specifically incorporates the following documents by reference: (1) the Declaration of Dennis Thumann submitted in support of Verizon and Wells Fargo's motion to dismiss the original complaint, (Docket Entry ["DE"] 30), and the exhibits attached thereto, including the GLI Plan and 2007 SPD, (Am. Compl., ¶ 249); (2) the Verizon/Prudential GSA, (*id.*, ¶ 273); and (3) the Group Contract. (*Id.*, ¶ 274). Moreover, the amended complaint relies heavily upon the terms and effect of the approximately seven (7) documents sent to Sullivan by Verizon, Hewitt, Wells Fargo and/or Prudential between June 20, 2011 and December 20, 2011, as well as the correspondence and documents exchanged between plaintiff and defendants following plaintiff's purported claim for life insurance benefits two (2) days after Sullivan's death, thus rendering those documents integral to the amended complaint.

### 2. Fed. R. Civ. P. 12(f)

However, the parties have also submitted additional extrinsic evidence that is not incorporated by reference or integral to the amended complaint, nor subject to judicial notice. For example, the branch of the joint motion of Verizon and Wells Fargo seeking dismissal of plaintiff's promissory estoppel claim against Verizon pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure relies upon a determination letter issued by the Verizon Claims Review Committee ("VCRC") dated September 22, 2014; and Hewitt submitted, *inter alia*, a copy of its

Administrative Services Agreement with Verizon Corporate Services Group, Inc. (the

"Verizon/Hewitt ASA"), effective November 1, 2009. In addition, plaintiff submitted, *inter alia*,

seven (7) extrinsic documents in opposition to defendants' motions to dismiss.

Rule 12(d) of the Federal Rules of Civil Procedure provides:

> "If, on a motion under Rule 12(b)(6) . . . , matters outside the
> pleadings are presented to and not excluded by the court, the
> motion must be treated as one for summary judgment under Rule
> 56. All parties must be given a reasonable opportunity to present
> all the material that is pertinent to the motion."

"Ordinarily, formal notice is not required where a party should reasonably have

recognized the possibility that the motion might be converted into one for summary judgment

and was neither taken by surprise nor deprived of a reasonable opportunity to meet facts outside

the pleadings." *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quotations, brackets and

citations omitted); *see also Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("A party is deemed to

have notice that a motion may be converted into one for summary judgment if that party 'should

reasonably have recognized the possibility' that such a conversion would occur." (quoting

*Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999))). "The district court's conversion of a Rule

12(b)(6) motion into one for summary judgment is governed by principles of substance rather

than form." *M.J.M. Exhibitors, Inc. v. Stern (In re G. & A. Books, Inc.)*, 770 F.2d 288, 295 (2d

Cir. 1985). "The essential inquiry is whether the appellant should reasonably have recognized the

possibility that the motion might be converted into one for summary judgment or was taken by

surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Id.*

"Resolution of this issue will necessarily depend largely on the facts and circumstances of each

case." *Id.*

"A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition to a motion to dismiss * * *." *M.J.M. Exhibitors*, 770 F.2d at 295 (citation omitted); *see also Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 57 (2d Cir. 2007) (finding that it was not error for the district court to consider evidence outside of the complaint in resolving a Rule 12(c) motion "without explicitly giving notice that it was converting the Rule 12 motion to a Rule 56 motion[,]" because it was "clear from the record * * * that [the non-moving party] knew additional factual considerations were being considered and, in fact, responded with its own evidentiary submissions."); *Sira*, 380 F.3d at 68 ("By attaching to their motion extensive materials that were not included in the pleadings, defendants plainly should have been aware of the likelihood of such a conversion.") Under such circumstances, neither party can complain that they were deprived of an adequate opportunity to provide the materials they deemed necessary to support or respond to the motion. *See Sira*, 380 F.3d at 68.

Plaintiff submitted extrinsic evidence of her own in opposition to defendants' motions to dismiss and it is clear that she recognized the possibility that the motion might be converted into one for summary judgment, as she repeatedly argues that defendants' motions should be denied because genuine issues of material fact exist, (*see, e.g.* Plf. Opp. at 29, 61, 63, 71, 78, 83), which is the standard of review on a motion for summary judgment, not a motion to dismiss pursuant to Rule 12(b)(6). Accordingly, where the parties rely upon extrinsic evidence that it not incorporated by reference in, or integral to, the amended complaint, that branch of the respective motion will be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure.

a.    Standard of Review

"A motion for summary judgment may properly be granted * * * only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.")  In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted)); *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 142 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 949, 190 L. Ed. 2d 830 (2015) ("The role of the court on a summary judgment motion is to determine whether, as to any material issue, a genuine factual dispute exists." (quotations and citation omitted)).  "On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the nonmoving party," *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quotations and citation omitted); *accord Delaney v. Bank of America Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dalberth*, 766 F.3d at 182 (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *see also Delaney*, 766 F.3d at 168. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. 557, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Smith*, 776 F.3d at 121.

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "[W]hen the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton County, New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).

The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Fabrikant*, 691 F.3d at 205 ("[C]onclusory statements or mere allegations will not suffice to defeat a summary judgment motion." (quotations and citation omitted)).

3.    ERISA Claims[10]

a.    Claim under Section 502(a)(1)(B) of ERISA ("Count I")

Plaintiff alleges, *inter alia*, (1) that as a beneficiary under the GLI Plan, she "was entitled to a payment of $679,700.00 and/or $35,000.00 upon the death of Ms. Sullivan," (Am. Compl., ¶¶ 278, 279), and "was entitled to a payment of $582,000.00 upon the death of Ms. Sullivan," (*id.*, ¶ 280); (2) that defendants "have refused to provide the appropriate payout to [her]," (*id.*, ¶ 281), causing her "to suffer monetary damages, including interest, attorney's fees, and costs[,]" (*id.*, ¶ 286); and (3) that defendants "were improperly motivated and operated under a conflict of interest arising from their breach of fiduciary and administrative duties, their internal policies

_____

[10] Although Verizon and Wells Fargo initially moved to dismiss plaintiff's ERISA claims for failure to exhaust administrative remedies, they subsequently amended their motion to withdraw that argument. (DE 80).

30

designed to escape liability for their breaches, and various other factors[,]" (*id.*, ¶ 285).  Plaintiff

seeks, *inter alia*, "damages in the amount of approximately $700,000.00 for her claim for life

insurance benefits under the [GLI Plan[,]" together with prejudgment interest on the benefits

awarded; attorney's fees and costs pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

and punitive damages.  (*Id.*, "Wherefore" clause).

All defendants contend that plaintiff fails to state a plausible claim for relief under

Section 502(a)(1)(B) of ERISA against them because, *inter alia*, they are not the "plan

administrator" specifically designated in the GLI Plan.  Plaintiff contends, *inter alia*, that the

correct plan administrator is not discernable at this stage of the proceedings.

Section 502(a) of ERISA provides, in relevant part, that "[a] civil action may be brought–

(1) by a participant or beneficiary– . . . (B) to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B).  The Second Circuit has long held that

"[i]n a recovery of benefits claim, only the plan and the *administrators* and trustees of the plan in

their capacity as such may be held liable" under Section 502(a)(1)(B) of ERISA.  *Leonelli v.

Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) (emphasis added).  Although *Leonelli*

referred to "the administrators . . . of the plan," many courts subsequently construed *Leonelli* and

its progeny as limiting liability under Section 502(a)(1)(B) to only the "plan administrator."  *See*,

*e.g. Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp. 3d 275, 292

(E.D.N.Y. 2014); *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, 621 F. Supp. 2d 96, 107

(S.D.N.Y. 2008).  As correctly noted by defendants, the GLI Plan specifically designates the

"Plan Administrator" as "[t]he Chairperson of the Committee,"  (Declaration of Dennis Thumann

["Thumann Decl."], Ex. A at 5), and "Committee," in relevant part, as "[t]he Verizon Employee Benefits Committee ["VEBC"], or any successor to such committee . . . ." (*Id.*, Ex. A at 3).

However, the Second Circuit recently held that "[b]y its plain terms, § 502(a)(1)(B) does not preclude suits against claims administrators[,] . . . [and] 'makes no mention at all of which parties may be proper defendants. . . .'" *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 132 (2d Cir. 2015), *cert. denied sub nom UnitedHealth Grp, Inc. v. Denbo*, 136 S. Ct. 506, 193 L. Ed. 2d 397 (2015) (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246, 120 S. Ct. 2180, 147 L. Ed. 2d 187 (2000)). Instead, the focus of Section 502(a)(1)(B) is on recovering benefits due a participant or beneficiary, or enforcing or clarifying his or her rights under the terms of the plan. *See id.* Thus, "when a claims administrator exercises total control over claims for benefits under the terms of the plan, that administrator is a logical defendant in the type of suit contemplated by § 502(a)(1)(B) . . . ." *Id.*

"[W]here the claims administrator has 'sole and absolute discretion' to deny benefits and makes 'final and binding' decisions as to appeals of those denials, the claims administrator exercises total control over claims for benefits and is an appropriate defendant in a § 502(a)(1)(B) action for benefits." *New York State Psychiatric Ass'n*, 798 F.3d at 132. In sum, liability under Section 502(a)(1)(B) of ERISA may be imposed upon the plan itself, any plan trustees, and any administrator that exercises total control over claims for benefits under the terms of the plan, not just the "plan administrator" specifically designated as such by the terms of the instrument under which the plan is operated. *See Id.*

Plaintiff did not name the GLI Plan as a defendant in this case and does not allege that any of the defendants are trustees of the GLI Plan. Thus, defendants can only be found liable

under Section 502(a)(1)(b) of ERISA if they are the "plan administrator" or an administrator that exercises total control over claims for benefits under the terms of the GLI Plan. The term "administrator" is defined in ERISA to mean, in relevant part, "the person[11] specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). Thus, only those individuals or entities designated in the GLI Plan as an "administrator" are proper defendants to a recovery of benefits claim pursuant to Section 502(a)(1)(B) of ERISA. Neither an employer nor an insurance company, nor any other person or entity that is not an administrator within the meaning of ERISA, 29 U.S.C. § 1002(16)(A), may be held liable as a *de facto* administrator merely because it provides services under the plan. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998).

Contrary to plaintiff's contention, the administrators of the GLI Plan under which plaintiff is seeking to recover benefits in "Count I" of her amended complaint are readily ascertainable from its terms. Section 7.1 of the GLI Plan provides, in relevant part:

> "The Company [Verizon] shall be the Plan Sponsor, the Chairperson of the [VEBC] shall be the Plan Administrator, and each of them shall be a Named Fiduciary of the Plan. The [VEBC] or its Chairperson (or his/her designee) shall appoint an Insurance Company or Insurance Companies as Administrators under the Plan, each of which also shall be a Named Fiduciary of the Plan. . . . Any Named Fiduciary may delegate any of its responsibilities hereunder, subject to the approval of the [VEBC], by designating in writing other persons to carry out its responsibilities under the Plan, and may retain other persons to advise it with regard to any of such responsibilities. . . . "

(Thumann Decl., Ex. A at 23).

---

[11]  The statute defines "person" to mean "an individual, partnership, joint venture, corporation mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).

Section 7.3 of the GLI Plan provides, in relevant part:

"The Chairperson of the [VEBC] (and, to the extent of any delegation to any person of any specific authority or responsibility by the Chairperson, then any person so delegated) shall have the authority and responsibility to oversee the administration of the Plan. It shall be a principal duty of the [VEBC's] Chairperson (and any such delegated individual) to see that the terms of the Plan are carried out for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them. The [VEBC's] Chairperson shall have full discretionary authority to administer the Plan in all of its details, subject to applicable requirements of law. For this purpose, the [VEBC] Chairperson's powers (and the powers of any person to whom delegated) shall include, but shall not be limited to, the following discretionary authority, in addition to all other powers provided by the Plan: . . . [] To appoint Claims Administrators under the Plan to decide claims for benefits under the Plan; provided, however, that the Chairperson of the [VCRC] shall likewise have the concurrent power to appoint the Claims Administrator of the Plan. [] To appoint Appeals Administrators and Final Appeals Administrators under the Plan to review and decide benefit claims on appeal; provided, however, that the Chairperson of the [VCRC] shall likewise have the concurrent power to appoint the Appeals Administrator (and, if applicable, the Final Appeals Administrator) of the Plan. [] To appoint Benefits Administrators under the Plan to be responsible for daily administration of the Plan. . . . [] To allocate and delegate any or all of its responsibilities under the Plan, and to designate other persons to carry out any of its responsibilities under the Plan. [] To construe and interpret the provisions of the Plan and to make factual determinations thereunder, and to remedy ambiguities, inconsistencies or omissions; and such determinations shall be binding on all parties; provided that, the Insurance Company or Insurance Companies shall have the authority to construe and interpret the provisions of the applicable Insurance Contract and make factual determinations thereunder. . . . [] To authorize the Claims Administrators to direct payments or distributions in accordance with the provisions of the Plan . . . .

The [VEBC's] Chairperson, the Chairperson of the [VCRC], the Administrators and such other persons as are delegated duties as described in this Section shall each have discretionary and final authority to interpret the terms of the Plan regarding matters for which they are respectively responsible as set forth in this Section 7.3 and the Plan."

(Thumann Decl., Ex. A at 23-24).

The "Benefits Administrator" is defined in the GLI Plan as "[t]he person or entity

designated by the Plan Administrator from time to time with the authority and responsibility to perform daily administration of benefits under the Plan.  The Benefits Administrators who have been so appointed under the Plan are listed in Appendix C."  (Thumann Decl., Ex. A, ¶ 2). Appendix C lists the Benefits Administrator under the Plan as Metropolitan Life Insurance Company ("MetLife").  (*Id.*, Ex. A at 34). However, pursuant to the Verizon/Hewitt ASA, Verizon "selected Hewitt to provide certain benefit plan administration Services . . . relating to the [GLI] Plan[] . . . ."[12]  (Otterberg Decl. , Ex. 1 at 3).

The "Appeals Administrator" is defined in the GLI Plan as "[t]he person(s) or committee charged with the duty of acting on behalf of the Plan as the administrator of initial appeals of

_____

[12]  The Verizon/Hewitt ASA provides, in pertinent part, that with an exception not relevant here,

> "Verizon and Hewitt understand and intend that Hewitt shall not be a fiduciary within the meaning of ERISA or any other federal, state or local law, statute, ordinance or regulation with respect to any Plan.  Hewitt shall not have any discretion with respect to the management or administration of any Plan or with respect to determining or changing the rules or policies pertaining to eligibility or entitlement of any Participant in any Plan to benefits under such Plan.  Hewitt also shall not have any control or authority with respect to any assets of any Plan, including the investment or disposition thereof.  All discretion and control with respect to the terms, administration or assets of any Plan shall remain with Verizon or with the named fiduciaries under such Plan."

(Otterberg Decl., Ex. 1 at 31, § 13.2(a)).  In addition, the Verizon/Hewitt ASA provides, in relevant part:

> "This Agreement has been entered into for the sole benefit of the parties and their respective permitted successors and assigns.  Except as specifically set forth in this Agreement, the parties do not intend the benefits of this Agreement to inure to any third party, and nothing contained herein shall be construed as creating any right, claim or cause of action in favor of any such third party against any party hereto.  Furthermore, this Agreement shall not create any legal relationship, interest or right whatsoever between Hewitt and any individual, beneficiary, Participant, applicant or assignee under any Plan."

(*Id.* at 35, § 17.1).

denied claims, which is the fiduciary to which broad discretion is granted under the Plan, including, for example, the discretion to interpret and apply the terms of the Plan and to make findings of fact in the course of reviewing and deciding an initial appeal of a denied claim for benefits under the Plan. The Appeals Administrators who have been so appointed under the Plan are listed in Appendix C." (Thumann Decl., Ex. A at 2). The "Claims Administrator" is defined in the GLI Plan as "[t]he person(s) or committee charged with the duty of acting as claims administrator on behalf of the Plan, which is the fiduciary to which broad discretion is granted under the Plan, including, for example, the discretion to interpret and apply the terms of the Plan and to make findings of fact in the course of deciding a disputed claim for benefits under the Plan. The Claims Administrators who have been so appointed under the Plan are listed in Appendix C." (*Id.*) Appendix C lists (1) the VCRC, care of the Verizon Benefits Center, as the Claims Administrator and Appeals Administrator for claims regarding enrollment procedures and eligibility to be considered a "Covered Person" under the Plan; and (2) MetLife as "[t]he Claims Administrator and Appeals Administrator for all other claims under the Plan . . . ." (*Id.*, Ex. A at 34). However, pursuant to the Verizon/Prudential GSA, entered in or about August 2010, Prudential "was appointed the Claims Administrator for any 'Group Insurance Contracts' entered into between Prudential and Verizon," including the Group Contract at issue. (Prudential Mem. at 5, n. 5).[13]

_____

[13] Section 4.3 of the Verizon/Prudential GSA provides, in relevant part:

"[Prudential] acknowledges that each Group Insurance Contract . . . provides that, with respect to the portion of the Plan insured by the Group Insurance Contract, [Prudential] is responsible for the payment of Plan benefits, is the appropriate named fiduciary for determining claims under Section 503 of ERISA, and has the final, discretionary fiduciary authority to determine eligibility for Plan benefits and claims for benefits under the Plan,

Section 11.1 of the GLI Plan pertaining to the benefit claim and appeal procedures under

the GLI Plan provides, in relevant part:

> "The Claims Administrator, the Appeals Administrator and (if applicable) the
> Final Appeals Administrator for the Plan are Named Fiduciaries of the Plan;
> provided, however, that the Chairperson of the [VCRC] shall have the authority
> and power to assume the role of Named Fiduciary with respect to claims and
> appeals to be decided under the Plan, and shall have the discretion to treat the
> Claims Administrator and/or the Appeals Administrator as the agent of the
> [VCRC] for purposes of deciding such claims and appeals. In any event, the
> Claims Administrator, the Appeals Administrator and the Final Appeals

_____

> including determining appeals of any adverse benefit determinations under the Plan.
> [Prudential] shall administer benefit claims and appeals according to Section 503 of
> ERISA and [Prudential's] claim and appeals policy, unless otherwise provided in the
> Benefits Plan Design. In carrying out this authority, [Prudential] acknowledges that each
> Group Insurance Contract . . . provides that, with respect to the portion of the Plan
> insured by the Group Insurance Contract, [Prudential] has the full discretion to interpret
> the terms of the Plan. [Prudential] acknowledges that it is a fiduciary of the Plan to the
> extent necessary to perform its obligations and duties as expressed in this [GSA] and the
> applicable Group Insurance Contract and to the extent that its performance of such
> actions constitutes fiduciary action under ERISA. [Prudential] shall not act as the
> administrator of the Plan nor shall it had any fiduciary responsibility in connection with
> any other element of the administration of the Plan except as provided above and in the
> applicable Group Insurance Contract." (Am. Compl., Ex. 1, ¶ 4.3).

In addition, Section 4.4 of the Verizon/Prudential GSA provides, in relevant part:

> " Verizon acknowledges that it or its designeee(s) serves as the 'plan sponsor,' 'plan
> administrator' and 'named fiduciary' of the Plan as those terms are defined in ERISA.
> Verizon has the discretionary authority and control over the management of the Plan, and
> all discretionary authority and responsibility for the administration of the Plan except as
> provided in Section 4.3 of this [GSA] and as provided in any applicable Group Insurance
> Contract. [Prudential] does not serve either as 'plan administrator' of the Plan or as the
> Plan's 'named fiduciary' except as provided in Section 4.3 and any applicable Group
> Insurance Contract. Verizon retains all final authority and responsibility for the Plan and
> its operation except as provided in Section 4.3 and any applicable Group Insurance
> Contract, and [Prudential] is empowered to act in connection with the Plan only as
> expressly stated in this Agreement and any applicable Group Insurance Contract or as
> otherwise agreed to by the Parties in writing." (_Id._, Ex. 1, ¶ 4.4).

Administrator have the right, and the full discretion and authority, to: [a] Interpret the applicable Insurance Contract or the Plan based on the Insurance Contract's or the Plan's provisions and applicable law and make factual determinations about claims arising under the Plan; [b] Determine whether a claimant is eligible for benefits; [c] Decide the amount, form, and timing of benefits; and [d] Resolve any other matter under the Plan that is raised by a claimant or that is identified by the Claims Administrator, the Appeals Administrator, or the Final Appeals Administrator. The Claims Administrator has sole authority to exercise discretion in the resolution of claims under the Plan. The Appeals Administrator has sole authority to exercise discretion in the review and resolution of any initial appeal of a denied claim under the Plan. . . . In case of an appeal under the Plan for which no Final Appeals Administrator has been designated, . . . the decision of the Appeals Administrator . . . is final and binding on all parties to the full extent permitted under applicable law, unless the claimant later proves that the Appeals Administrator's decision . . . was an abuse of discretion. . . ."

(Thumann Decl., Ex. A at 29).

Like the GLI Plan, the 2007 SPD, incorporated by reference in the amended complaint, also identifies the "plan administrator" as the Chairperson of the VEBC and indicates that he or she can be contacted at the Verizon Benefits Center at the address and/or telephone number provided therein. (Thumann Decl., Ex. B at 24). However, the 2009 SPD submitted by plaintiff identifies the "plan administrator" as "Verizon c/o Verizon Benefits Center." (Mestecky Decl., Ex. 5 at 25). Both SPDs further provide, in relevant part, as follows:

"You may communicate to the plan administrator in writing at the address [provided] or via the telephone number shown on your Important Benefits Contacts insert. But, for questions about plan benefits, you should contact the Verizon Benefits Center or the claims administrator . . . . The Verizon Benefits Center administers enrollment and handles participant questions, requests and certain benefits claims, but is not the plan administrator. The benefit administrator performs the daily administration of benefits.

The plan administrator or a person designated by the administrator has the full and final discretionary authority to publish the plan documents and benefit plan communications, to prepare reports and make filings for the plans and to otherwise oversee the administration of the plans. However, most of your day-to-day questions can be answered by the plans' benefit administrator or a Verizon

Benefits Center representative."

(Thumann Decl., Ex. B at 24-25; Mestecky Decl., Ex. 5 at 25).  The SPDs further define the role

of the claims and appeals administrators as follows:

> "Do not send any benefit claims to the plan administrator . . . . Instead, submit
> them to the claims administrator for the plans (see below).
>
> There are several claims administrators for the plans.  The claims administrator
> has the authority to make final determinations regarding claims for benefits.
>
> The VEBC [or Verizon in the 2009 SPD] has delegated its authority to finally
> determine claims to the [VCRC], except in cases where an authorized Verizon
> official delegates, on behalf of the VEBC, the authority to finally determine
> claims to the benefit administrator on behalf of Verizon.  Benefits under these
> plans will be paid only if the VEBC [or Verizon in the 2009 SPD], or its delegate,
> decides in its discretion that the applicant is entitled to the benefits.
>
> The claims administrator is authorized to determine eligibility for benefits and
> interpret the terms of the plans in its sole discretion, and all decisions by the
> claims administrator are final and binding on all parties."

(Thumann Decl, Ex. B at 25; Mestecky Decl., Ex. 5 at 26).

Thus, under the GLI Plan and the SPDs, the claims administrator designated thereunder

exercises total control over claims for benefits, and Prudential admits that it was the "claims

administrator under the ERISA plan at issue."  (Prudential Mem. at 1; *see also* Transcript of Oral

Argument on Defendants' Motions to Dismiss held before Judge Bianco on April 8, 2015 ["Tr."]

at 12-13 ("[A]t the core of this action is a life insurance policy that was issued to the plaintiff's

mother Kathleen Sullivan[] . . . pursuant to an employee benefit plan that was sponsored by

Verizon.  And Prudential, according to a general service agreement between Prudential and

Verizon, served as the insurer and the claims administrator for that insurance policy.")).

Moreover, Prudential paid plaintiff's initial "claim for a death benefit," (Tr. 60), *i.e.*, it paid

plaintiff's assignee for Sullivan's funeral expenses and sent plaintiff a check in the amount of twenty dollars ($20.00), "after confirming with Verizon that [Sullivan's] salary was [$]18,600 a year . . . ." (*Id.* at 60-61). Since Prudential, in its capacity as the claims administrator under the GLI Plan, exercised total control over claims for benefits under the terms of the GLI Plan, the amended complaint states a plausible claim for relief against it pursuant to Section 502(a)(1)(B) of ERISA. *See New York State Psychiatric Ass'n*, 798 F.3d at 132. Accordingly, the branch of Prudential's motion seeking dismissal of plaintiff's Section 502(a)(1)(B) ERISA claim against it is denied.

Moreover, since, *inter alia*, Verizon is designated as the plan administrator in the 2009 SPD,[14] the branch of its motion seeking dismissal of plaintiff's Section 502(a)(1)(B) ERISA claim against it is denied.

However, since Wells Fargo, Xerox and Hewitt are not designated as the plan administrator, claims administrator or other administrator that exercises total control over claims for benefits by the terms of any instrument under which the GLI Plan is operated, the branches of their respective motions seeking dismissal of plaintiff's Section 502(a)(1)(B) of ERISA claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's Section 502(a)(1)(B) ERISA claim ("Count I") is dismissed in its entirety with prejudice as against Wells Fargo, Xerox and Hewitt for failure to state a plausible claim for relief.

_____

[14] The 2009 SPD was submitted by plaintiff in her opposition to defendants' motions to dismiss. Verizon does not address this issue, or otherwise refer to the 2009 SPD, in its reply memorandum of law.

b.      Claim under Section 502(a)(1)(A) of ERISA ("Count IV")[15]

Plaintiff alleges, *inter alia*, (1) that "on numerous occasions, [she] requested of Defendants plan documents, summary plan documents and documents regarding the life insurance policy(s) of Ms. Sullivan[,]" (Am. Compl., ¶ 339); (2) that she "has not yet been provided the applicable plan documents, summary plan documents, life insurance certificates or life insurance policy(s) related to Ms. Sullivan[,]" (*id.*, ¶ 340); and (3) that defendants did not respond to her requests within thirty (30) days. (*Id.*, ¶¶ 341-344). Plaintiff seeks statutory penalties in the amount of one hundred dollars ($100.00) per day "from the date of such failure to provide requested information from the administrators." (*Id.*, ¶ 345).

Xerox contends, *inter alia*, that it is not a proper party to plaintiff's Section 502(a)(1)(A) ERISA claim because it is not an administrator of the GLI Plan. Prudential, Hewitt and Verizon contend that they are not proper parties to plaintiff's Section 502(a)(1)(A) ERISA claim because they are not the "plan administrator" designated in the GLI Plan. Verizon further contends that "[t]his claim should be dismissed because the correspondence between [it] and Plaintiff's counsel unequivocally shows that [it] has fully responded to all written requests for Plan documents received from either [plaintiff] or her counsel." (Verizon's and Wells Fargo's Memorandum of Law in Support of their Motion to Dismiss ["Verizon Mem."] at 16).

Plaintiff contends that there are issues of fact regarding whether Verizon responded to her "request for documents in the manner required by ERISA," (Plf. Opp. at 61); and "acknowledge[s] that liability under Section 502(c)(1)(B) . . . attaches only to the plan and to administrators of the plan, as that term is defined under ERISA, (*id.* at 62), but contends that the

---

[15]  Plaintiff does not assert this claim against Wells Fargo. (*See* Am. Compl., ¶¶ 335-338).

"correct plan document or plan administrator" cannot be ascertained at this stage of the proceedings.  (*Id.* at 63).

Section 502(a) of ERISA provides, in relevant part, that "[a] civil action may be brought–(1) by a . . . beneficiary– (A) for the relief provided for in subsection (c) of this section[.]"  Plaintiff, as a beneficiary of the GLI Plan, seeks relief under paragraph (1) of subsection (c) of that Section which provides, in relevant part:

> "*Any administrator* . . . (B) who fails or refuses to comply with a request for any information *which such administrator is required by this subchapter to furnish* to a . . . beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting . . . beneficiary within 30 days after such request may in the court's discretion be personally liable to such . . . beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, . . . each violation described in subparagraph (B) with respect to any single . . . beneficiary, shall be treated as a separate violation."[16]

29 U.S.C. § 1132(c)(1) (emphasis added).  Since, as set forth above, Xerox and Hewitt are not "administrators" within the meaning of ERISA, 29 U.S.C. § 1002(16)(A), plaintiff cannot recover statutory damages under Section 502(c)(1)(B) of ERISA for the purported failure of Xerox and Hewitt to disclose the information plaintiff purportedly requested from them.  *See, e.g. Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008).  Accordingly, the branches of Xerox's and Hewitt's motions seeking dismissal of plaintiff's Section 502(a)(1)(A) ERISA claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's Section 502(a)(1)(A) ERISA claim ("Count IV") is dismissed in its

---

[16]  "[T]he maximum amount of the civil monetary penalty established by [S]ection 502(c)(1) of [ERISA]" has been increased to one hundred ten dollars ($110.00) a day for violations occurring after July 29, 1997.  29 C.F.R. § 2575.502c-1.

entirety with prejudice as against Xerox and Hewitt for failure to state a plausible claim for relief.

Moreover, although Prudential was the claims administrator of the GLI Plan, it was not the plan administrator of the GLI Plan and the amended complaint is devoid of any allegations from which it may reasonably be inferred that plaintiff requested information from Prudential which it, as the claims administrator of the GLI Plan, was required by subchapter I of ERISA to furnish to her. *See, e.g. Krauss*, 517 F.3d at 631 (holding that the plaintiff cannot recover statutory damages under Section 502(c) of ERISA for the nondisclosure of certain information by the claims administrator); *Carroll v. Los Alamos Nat'l Sec., LLC*, 704 F. Supp. 2d 1200, 1212 (D. N.M. 2010), *aff'd*, 407 F. App'x 348 (10th Cir. 2011) (holding that a failure to supply requested documents can give rise to ERISA liability under Section 502(c)(1)(B) "if some section of subchapter I of ERISA requires the plan administrator to supply them[.]"); *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 780-81 (E.D. Pa. 2011) (finding that the proposed amended complaint failed to state a claim under Section 502(c)(1) of ERISA because the plaintiffs failed to identify the corresponding provision within subchapter I of ERISA that related to the information they requested); *Curran v. Aetna Life Ins. Co.*, No. 13-cv-00289, 2013 WL 6049121, at * 4 (S.D.N.Y. Nov. 15, 2013) ("The second criterion for sanctions under § 502(c) is that the information the plan administrator refuses to furnish is that information specifically required by . . . Subchapter I . . . .") Accordingly, the branch of Prudential's motion seeking dismissal of plaintiff's Section 502(a)(1)(A) ERISA claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted and plaintiff's Section 502(a)(1)(A) ERISA claim ("Count IV") against Prudential is dismissed in its entirety with prejudice for failure to state a plausible claim for relief.

However, since Verizon is the plan administrator designated in the 2009 SPD, it may be liable under Section 502(c)(1)(B) of ERISA for refusing or failing to mail to plaintiff any material specifically requested by her that it was required to furnish by subchapter I of ERISA within thirty (30) days of plaintiff's request therefor. Plaintiff's conclusory allegations, *inter alia*, that she "has requested documentation pertaining to the life insurance policy of Ms. Sullivan and plan documents, and Defendants have refused [her] request[,]" (Am. Compl., ¶ 213), and that in or about January, February and March 2013, she "requested documentation from Defendants Verizon, Prudential, Xerox and Hewitt pertaining to the life insurance policy of Mr. Sullivan and plan documents[,] [but] Defendants refused [her] request," (*id.*, ¶¶ 231-233), are insufficient to state a plausible claim for relief under Section 502(c)(1)(B) of ERISA. Indeed, the factual, as opposed to conclusory, allegations in the amended complaint, and the documents incorporated by reference or integral thereto, indicate (1) that plaintiff requested that Verizon provide her "with plan documents and other documents related to this matter[,]" and with twenty-one (21) specific materials or categories of materials, *e.g.*, Plan documents, life insurance documents, the Group Contract, etc., by letters dated July 22, 2014 and July 28, 2014, respectively, (Am. Compl., ¶ 250; Grande Decl., Exs. 4 and 5); and (2) that by correspondence dated August 21, 2014, Verizon furnished most of the material it was required to furnish under subchapter I of ERISA, and provided reasonable explanations for its failure to provide other materials, *e.g.*, that its counsel needed to consult with Hewitt and Xerox before producing Verizon's agreements with each of them and was unable to find any settlement agreements or related documents following a search therefor; that it is not required to provide certain other documents, etc. (Am. Compl., ¶ 255; Grande Decl., Ex. 6).

Nonetheless, plaintiff also alleges, *inter alia*, that Verizon failed to provide "the collective bargaining agreement in place at the time of Ms. Sullivan's employment," (Am. Compl., ¶ 255), which it was required to produce by Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4); and the documentary evidence indicates that plaintiff requested a copy of the collective bargaining agreement by letter dated July 28, 2014, but Verizon did not furnish her with a copy thereof until October 23, 2014, *i.e.*, eighty-seven (87) days after plaintiff's request therefor. Accordingly, the amended complaint states a plausible claim for relief under Section 502(c)(1)(B) of ERISA against Verizon with respect to its failure to timely provide plaintiff with a copy of the relevant collective bargaining agreement. Therefore, the branch of the joint motion of Verizon and Wells Fargo seeking dismissal of plaintiff's Section 502(a)(1)(A) ERISA claim against Verizon pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.

c.      Claim under Section 503 of ERISA ("Count III")[17]

Section 503 of ERISA provides:

> "In accordance with regulations of the Secretary [of Labor], every *employee benefit plan* shall– (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133 (emphasis added). Plaintiff alleges, *inter alia*, (1) that Verizon, Prudential, Hewitt and Xerox did not provide her with: (a) "specificity regarding the denial of benefits," (Am. Compl., ¶ 328), (b) "sufficient written notice of the denial," (*id.*, ¶ 329), or (c) "a full and

---

[17]  Plaintiff does not assert this claim against Wells Fargo. (*See* Am. Compl., ¶ 327).

fair review by a fiduciary," (*id.*, ¶ 330); and (2) that their "denial of benefits was arbitrary and capricious because they failed to follow the procedural requirements of ERISA." (*Id.*, ¶ 331). Plaintiff does not seek any specific relief with respect to this claim and, for the reasons set forth below, the amended complaint fails to state a plausible claim for equitable relief. Thus, the only relief sought by plaintiff that is potentially applicable to this claim is for "damages, including punitive and attorneys [sic] fees, in an amount to be determined at trial[.]" (*Id.*, "Wherefore" clause).

Xerox and Hewitt contend, *inter alia*, that Section 503 ERISA does not create a private right of action for damages. Prudential and Hewitt contend, *inter alia*, that they are not proper parties to plaintiff's Section 503 claim because they are not employee benefit plans, and Section 503 "exclusively imposes obligations on employee benefit plans." (Prudential Mem. at 14).[18]

Plaintiff contends, *inter alia*, that "[s]ince [her] claim for benefits was denied in or about January 2013 and Defendants failed to provide any response for the denial until September 22, 2014, after [she] filed her Amended Complaint, dismissal of [her] § 503 claims [sic] is inappropriate[,]" (Am. Compl. at 60); and that her "Section 503 claim is requesting equitable

---

[18] Verizon contends that plaintiff's Section 503 ERISA claim is premature because the amended complaint "was filed prior to the issuance of the determination and decision with respect to [her written claim for benefits dated July 22, 2014] on September 22, 2014 by the VCRU [the Verizon Claims Review Unit], the Plan's designated Claims Administrator[,]" and plaintiff "should at least be required to wait until she has pursued and exhausted the Plan's claim and appeal procedures before accusing [it] and the Plan of not providing her with a 'full and fair review' of the determination denying her claim for benefits under the Plan." (Verizon Mem. at 15-16). However, Verizon and Wells Fargo filed an amended motion indicating, *inter alia*, that plaintiff has now exhausted the GLI Plan's claim and appeal procedures. Although Verizon and Wells Fargo withdrew their failure to exhaust defense, they did not also withdraw this claim; nor do they contend that plaintiff's Section 503 ERISA claim fails to state a claim for relief because, *inter alia*, the Plan complied with the obligations imposed upon it by Section 503 of ERISA.

relief in the form of a directive from this Court that the plan administrator provide [her] with correspondence as to the January 2013 denial of benefits." (*Id.* at 61).

Section 503 of ERISA imposes duties only upon "employee benefit plan[s]," as that term is defined in 29 U.S.C. § 1002(3); it does not authorize the imposition of sanctions against, *inter alia*, administrators of the plan. *See Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986). As plaintiff did not name the GLI Plan as a defendant in this case, the amended complaint fails to state a plausible claim for relief under Section 503 of ERISA.

Moreover, the regulation promulgated pursuant to Section 503 of ERISA contains an express remedial provision providing that "[i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503-1(*l*). The Second Circuit has recently held that "[t]he absence of a civil penalties provision [in the regulation] coupled with an express remedial provision suggests that the Department [of Labor] intended the express remedy to be exclusive." *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 58 (2d Cir. 2016).

Moreover, "ERISA itself contains a number of detailed civil penalties provisions, none of which entitles a participant or beneficiary to civil penalties for violations of the Department's claims-procedure regulation[,]" *Halo*, 819 F.3d at 58, and "the federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide." *Id.* at 59.

"The Supreme Court has been particularly reluctant to recognize such non-statutory remedies in the ERISA context, noting that 'because ERISA is a comprehensive reticulated statute, and is enormously complex and detailed, it should not be supplemented by extratextual remedies.'" *Id.* (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)).  Accordingly, "a participant or beneficiary is not entitled to civil penalties for a plan's failure to comply with the claims-procedure regulation" promulgated pursuant to Section 503 of ERISA.  *Id.* at 61; *see also Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 435 (S.D.N.Y. 2005), *aff'd*, 517 F.3d 614 (2d Cir. 2008) ("[V]iolations of § 1133 do not give rise to statutory damages under § 1132(c). . . . If defendant fails to adhere to the procedures set in §1133, the appropriate remedy would be a remand to the administrative level for reconsideration. . . . Defendant's failure to comply with § 1133, without more, is not compensable under ERISA.")  Accordingly, the branches of Prudential's, Xerox's and Hewitt's motions seeking dismissal of plaintiff's Section 503 ERISA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's claim pursuant to Section 503 of ERISA ("Count III") is dismissed in its entirety with prejudice for failure to state a claim for relief.

> d.      Claim under Section 502(a)(3) of ERISA ("Count II")

Plaintiff claims, in essence, that defendants breached the fiduciary duties imposed upon them by Section 404(a)(1)(A), (B) and (D), of ERISA.[19]  Specifically, plaintiff alleges that

---

[19]  Section 404(a)(1) of ERISA provides, in relevant part:

> "Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and

defendants (1) "manipulat[ed] the contents of the life insurance benefits or, in the alternative, fail[ed] to safeguard [their] own records and documents of Ms. Sullivan's life insurance policy[,]" (Am. Compl., ¶ 297); (2) fraudulently, willfully, maliciously and/or in bad faith, amended or altered Sullivan's W-2s for 2011 and 2012 "to conceal the representations made to Ms. Sullivan while she was alive[,]" (*id.*, ¶¶ 299-303); (3) "breached their fiduciary duty of loyalty by [a] failing to protect the interest of [p]laintiff, a plan beneficiary[,] . . . [and] [b] making decisions based upon a conflict of interest[,]" (*id.*, ¶¶ 319-20); (4) "breached their fiduciary duty [a] to disclose information and avoid misrepresentations[,] . . . [and] [b] to act in accordance with the documents and instruments governing the plan by failing to make claim decisions based upon and after review of the plan documents[,]" (*id.*, ¶¶ 321-322); and (5) "breached their fiduciary duty of prudence by [a] failing to act with the [sic] care, skill, prudence and diligence[,] . . . [b] fail[ing] to conduct a thorough, impartial investigation of [her] claim[,] . . . [and] [c] failing to train and supervise their employees." (*Id.*, ¶¶ 323-324). In addition, plaintiff alleges, in the alternative, that defendants are both fiduciaries or non-fiduciaries under ERISA and that the "non-fiduciary [d]efendants knowingly participated in the fiduciary breach by those [d]efendants who are fiduciaries." (*Id.*, ¶¶ 289-294, 305). The only equitable relief sought in the

---

beneficiaries and– (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and . . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

29 U.S.C. § 1104(a)(1).

amended complaint with respect to plaintiff's ERISA breach of fiduciary claims is: (1)

"injunctive relief requiring each [d]efendant to undertake such action that is necessarily required

to assure payment of the past due and owing life insurance benefits to [her][,]" (*id.* at

"Wherefore" clause, ¶ (e)); and (2) imposition of a constructive trust in the amount of

approximately $700,000.00 for [her] benefit." (*Id.* at "Wherefore" clause, ¶ (f)).

Defendants contend, *inter alia*, that the amended complaint fails to state a claim under

Section 502(a)(3) of ERISA because all of the relief plaintiff seeks is legal in nature. Plaintiff,

*inter alia*, "acknowledges that the equitable relief available under Section 502(a)(3) excludes

traditionally legal remedies . . .," (Plf. Opp. at 55), but contends that "because the label applied to

a claim is not determinative, an examination of the basis for [her] claim and the nature of the

underlying remedies are necessary." (*Id.* at 56).

Section 502(a) of ERISA provides, in relevant part, that "[a] civil action may be brought–

. . . (3) by a . . . beneficiary . . . (A) to enjoin any act or practice which violates any provision of

this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the

plan[.]" 29 U.S.C. § 1132(a)(3). Section 502(a)(3) has been described by the Supreme Court as a

"'catchall' provision[] . . . offering appropriate equitable relief for injuries caused by violations

that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512,

116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996). "[W]here Congress elsewhere provided adequate

relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which

case such relief normally would not be 'appropriate.'" *Id.* at 515, 116 S. Ct. 1065.

The Second Circuit recently held that "*Varity Corp.* did not eliminate a private *cause of*

*action* for breach of fiduciary duty when another potential remedy is available." *New York State Psychiatric Ass'n*, 798 F.3d at 134 (emphasis in original) (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001)). "Instead, . . . if a plaintiff succeeds on both claims [] the district court's *remedy* is limited to such equitable relief as is considered appropriate." *Id.* (emphasis in original; quotations, alterations and citation omitted). The Second Circuit also held that dismissal of a Section 502(a)(3) ERISA claim is premature where, *inter alia*, the plaintiff "has not yet succeeded on his § 502(a)(1)(B) claim, *and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy.*" *Id.* (emphasis added).

Unlike *New York State Psychiatric Ass'n*, it is clear from the allegations in the amended complaint, and the relief sought therein, that plaintiff is "seek[ing], in essence, to impose personal liability on [defendants] for a contractual obligation to pay money– relief that was not typically available in equity[,]" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002), and, thus, that any harm to plaintiff can be entirely compensated by monetary damages. "Under [the Supreme Court's] precedents, whether the remedy a plaintiff seeks is legal or equitable depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought." *Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan*, — U.S. —, 136 S. Ct. 651, 657, 193 L. Ed. 2d 556 (2016) (quotations, alterations and citation omitted). "Almost invariably[,] suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."

*Great-West*, 534 U.S. at 210, 122 S. Ct. 708 (quotations, alterations and citation omitted). "And money damages are, of course, the classic form of legal relief." *Id.* (quotations, brackets, emphasis and citation omitted).

Although plaintiff asserts a claim for injunctive relief "requiring each [d]efendant to undertake such action that is necessarily required to assure payment of the past due and owing life insurance benefits to [her][,]" (Am. Compl. at "Wherefore" clause, ¶ (e)), "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity[,]" *Great-West*, 534 U.S. at 210-211, 122 S. Ct. 708, and, thus, does not constitute appropriate equitable relief under Section 502(a)(3) of ERISA. *See Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 153-55 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1847, 191 L. Ed. 2d 725 (2015). In other words, since any harm to plaintiff can be entirely compensated by damages allowing her to recover the value of the death benefits allegedly wrongfully denied her by defendants, the amended complaint fails to state a plausible claim for injunctive relief. *Compare Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (affirming the dismissal of the plaintiff's § 502(a)(3) claims because it was clear that she "[could not] satisfy the conditions required for injunctive relief[] [because] any harm to her [could] be compensated by money damages, and she could have pursued an alternative and effective remedy under § 502(a)(1)(B) of ERISA to recover the value of benefits wrongly denied") *with New York State Psychiatric Ass'n*, 798 F.3d 135 (distinguishing the injunctive relief sought in that case, *i.e.*, prohibiting the defendant-fiduciary from violating ERISA in the future, coupled with "surcharge" or monetary compensation to redress a loss resulting from the defendant-fiduciary's breach of duty or to

prevent the defendant-fiduciary's unjust enrichment, from the relief sought in *Nechis*, *i.e.*, to

correct the defendant-fiduciary's disclosures and reform its claims resolution and appeals

procedures based upon its past denial, delay or mishandling of claims for health care benefits and

failure to disclose information to plan participants, and for restitution of the money the plaintiff

paid as premiums for the health care coverage).  Unlike *New York State Psychiatric Ass'n*, the

injunctive relief sought in the amended complaint does not seek to enjoin any future conduct by

defendants that violates ERISA, and the amended complaint does not seek monetary

compensation to redress any loss to plaintiff resulting from defendants' alleged breaches of

fiduciary duty or to prevent defendants' unjust enrichment.[20]

Although "a plaintiff could seek restitution in equity, . . . in the form of a constructive

trust . . ., where money or property identified as belonging in good conscience to the plaintiff

could clearly be traced to particular funds or property in the defendant's possession[,]" *Great-*

*West*, 534 U.S. at 213, 122 S. Ct. 708 (emphasis omitted), "for restitution to lie in equity, the

---

[20]  Like *Nechis*, the purported equitable relief specified for the first time in plaintiff's opposition to defendants' motions to dismiss, *i.e.*, injunctive relief requiring defendants to amend or correct Sullivan's W-2s and the GLI Plan's accounting records, and to properly maintain employee records, (*see* Plf. Opp. at 56), is based upon their purported past conduct and is insufficient to state a plausible claim for equitable relief under Section 502(a)(3) of ERISA.  Moreover, that relief, (1) will not redress defendants' alleged violations of ERISA or the terms of GLI Plan absent payment of the allegedly denied life insurance benefits to plaintiff; and (2) does not seek to enforce any specific provision of ERISA.  *See* 29 U.S.C. § 1132(a)(3).  In addition, plaintiff's claim for "such other and further relief as this Court may be deemed [sic] just, equitable and proper[,]" (Am. Compl., "Wherefore" clause, ¶ (h)), is "insufficient to assert a proper equitable claim under § 502(a)(3)." *Hall v. Kodak Ret. Income Plan*, 363 F. App'x 103, 107 (2d Cir. Feb. 1, 2010) (summary order) (holding that "a claim for 'unspecified' relief, where the gravamen of the complaint is a claim for damages and other monetary relief owing under a contractual obligation, is insufficient to assert a proper equitable claim under § 502(a)(3)." (quotations and citation omitted)).

action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214, 122 S. Ct. 708. Thus, although plaintiff seeks to impose a constructive trust "in the amount of approximately $700,000.00 for [her] benefit[,]" (Am. Compl. at "Wherefore" clause, ¶ (f)), the amended complaint is bereft of any factual allegations from which it may reasonably be inferred that the funds to which she claims an entitlement under the GLI Plan are actually in defendants' possession. In other words, the basis for plaintiff's claim is not that defendants hold particular funds that, in good conscience, belong to her, but that she is entitled to some funds as a beneficiary under the GLI Plan for which defendants are personally liable as a result of their purported breach of a fiduciary duty. "The kind of restitution that [plaintiff] seek[s], therefore, is not equitable– the imposition of a constructive trust . . . on particular property– but legal– the imposition of personal liability [on defendants]." *Great-West*, 534 U.S. at 214, 122 S. Ct. 708; *see also Montanile*, — U.S. —, 136 S. Ct. at 657 ("[T]he restitution sought in *Great-West* was legal– not equitable– because the specific funds to which the [plaintiffs] claimed an entitlement [] were not in the defendants' possession. . . .") (quotations, alterations and citation omitted). "Since both the basis for [plaintiff's] claim and the particular remedy sought [are] not equitable, . . . [plaintiff] [can]not sue under § 502(a)(3)." *Montanile*, — U.S. —, 136 S. Ct. at 657. Accordingly, the branches of defendants' motions seeking dismissal of plaintiff's Section 502(a)(3) ERISA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are granted and plaintiff's Section 502(a)(3) ERISA claim ("Count II") is dismissed in its entirety

with prejudice for failure to state a claim for relief.[21]

### 4. Plaintiff's State Law Claims

In addition to her breach of fiduciary duty claim set forth above, and her promissory estoppel claim set forth below, plaintiff asserts the following state common law claims seeking, *inter alia*, damages in the approximate amount of seven hundred thousand dollars ($700,000.00): (a) breach of "applicable provisions of the life insurance contract(s)," (Am. Compl., ¶ 397), "incorporated by reference" in the amended complaint, (*id.*, ¶ 377), *i.e.*, the GLI Plan, the Verizon/Prudential GSA, and the Group Contract, (*id.*, ¶¶ 249, 273 and 274) ("Count VI"); (b) breach of "the contracts incorporated by reference" in the amended complaint, to which plaintiff allegedly was a third party beneficiary, (*id.*, ¶¶ 402-403) ("Count VII"); (c) tortious interference with the contracts "incorporated by reference" in the amended complaint, (*id.*, ¶ 414) ("Count VIII"); (d) fraudulent misrepresentations made either (i) "to induce Ms. Sullivan to forego her claims against Verizon related to its improper unilateral withdrawal of employee benefits . . . and to forego additional life insurance and retirement options[,]" (*id.*, ¶ 437; *see also id.*, ¶¶ 449, 460), (ii) "to conceal the representations made to Ms. Sullivan while she was alive[,]" (*id.*, ¶¶ 440, 442, 453, 455, 465, 467), or (iii) "to deceive Plaintiff from becoming aware of the mistake of [d]efendants[,]" (*id.*, ¶ 461) ("Count IX," "Count X" and "Count XI"); and (e) negligent misrepresentations regarding "the amounts in life insurance," (*id.*, ¶ 471), "result[ing] in an insufficient amount of life insurance being paid to . . . [p]laintiff[,]" (*id.*, ¶ 475) ("Count XII").

---

[21] In light of this determination, it is unnecessary to consider defendants' remaining contentions seeking dismissal of plaintiff's ERISA claims.

With respect to her promissory estoppel claim ("Count V"), plaintiff alleges, *inter alia*, (1) that "[t]he documentation and oral representations provided by Defendants Verizon and/or Wells Fargo and/or Hewitt and/or Prudential to Ms. Sullivan and Plaintiff regarding the life insurance benefits and settlement of claims constituted a promise that Plaintiff was entitled to such benefits[,]" (Am. Compl., ¶ 347); (2) that "[t]he documentation provided by . . . Verizon and Prudential to Ms. Sullivan regarding the life insurance benefits constituted a promise that [she] was entitled to such benefits[,]" (*id.*, ¶ 348); (3) that "[t]he documentation prepared and delivered by" Hewitt, Wells Fargo and Xerox to Sullivan and plaintiff, "regarding a life insurance benefit constituted a promise that such benefit was available[,]" (*id.*, ¶¶ 349-354); (4) that "[s]uch promises were clearly and unambiguously stated in the paperwork provided by [d]efendants to [p]laintiff and Ms. Sullivan[,]" (*id.*, ¶ 355); (5) that it was reasonable and foreseeable that Sullivan and plaintiff would rely upon those promises, (*id.*, ¶¶ 356-357); (6) that Sullivan and plaintiff "did, in fact, rely on such promises[,]" (*id.*, ¶¶ 358-359), by failing to procure "additional life insurance benefits or other death benefits for Ms. Sullivan[,]" (*id.*, ¶¶ 361, 362), and "agree[ing] to permit [Sullivan] to reside with [plaintiff] rent-free," (*id.*, ¶ 363); and (7) that "[a]n injustice will be had if [p]laintiff is not provided the life insurance benefits that she and Ms. Sullivan were promised[,] [because] [d]efendants will be provided a substantial windfall because of their actions[,]" (*id.*, ¶ 364). Plaintiff seeks "damages in the amount of $679,700.00 and/or $35,000.00 AND/OR [sic] $582,000.00 for her claim for life insurance benefits under the doctrine of Promissory Estoppel." (*Id.*, "Wherefore" clause, ¶ (d)).

Defendants contend, *inter alia*, that plaintiff's state law claims are preempted by ERISA. Plaintiff contends, *inter alia*, that defendants' "argument is flawed because [she], primarily, is

not suing as a participant seeking to recover benefits from Verizon's [GLI] Plan, but, rather, as a beneficiary seeking economic damages from Defendants as a result of their breach of and/or interference with the separate and distinct Settlement Agreement." (Plf. Opp. at 20). According to plaintiff, she "only brought ERISA claims, arguing in the alternative under § 502(a)(1)(B), based upon the disputed representation by Defendants that an ERISA plan exists and governs this matter." (*Id.*)

Section 514(a) of ERISA provides, in relevant part, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . ." 29 U.S.C. § 1144(a). Since ERISA's "integrated enforcement mechanism, ERISA § 502(a), 29 U.S.C. § 1132(a), is . . . essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans[,]" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004), "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209, 124 S. Ct. 2488.

"[I]f an individual brings suit complaining of a denial of [benefits], where the individual is entitled to such [benefits] only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls within the scope of ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210, 124 S. Ct. 2488 (quotations and citation omitted). Thus, state common law claims are completely preempted by Section 502(a)(1)(B) of ERISA if: (1) "an individual, at some point in

time, could have brought his claim under ERISA § 502(a)(1)(B), and [2] . . . there is no other independent legal duty that is implicated by a defendant's actions. . . ." *Davila*, 542 U.S. at 210, 124 S. Ct. 2488; *accord Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 241 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1400, 191 L. Ed. 2d 360 (2015); *see also Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) ("As to state common law claims, ERISA preempts those that seek to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA." (quotations and citation omitted)). "State law claims are completely preempted only if both parts of this test are satisfied." *Wurtz*, 761 F.3d at 241; *see also Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011) ("The test is conjunctive; a state-law cause of action is preempted only if both prongs of the test are satisfied.")

Under the first prong of *Davila*, courts first "consider whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B); . . . [then] whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to §502(a)(1)(B)." *Wurtz*, 761 F.3d at 241-42 (emphasis in original; quotations and citation omitted); *accord Arditi v. Lighthouse Int'l*, 676 F.3d 294, 299 (2d Cir. 2012). It is undisputed that plaintiff is the type of party who can bring an ERISA claim because she is the designated beneficiary of Sullivan, who was enrolled in the GLI Plan either by virtue of her employment with Verizon's predecessor, (*see* Am. Compl., ¶ 115), or pursuant to her settlement agreement with Verizon, and she is seeking benefits under the group life insurance policy issued by Prudential as part of the GLI Plan.

Plaintiff's state law claims seeking damages in the amount of approximately seven hundred thousand dollars ($700,000.00) for breach of fiduciary duty ("Count II"); breach of, and

tortious interference with, the contracts "incorporated by reference" in the amended complaint[22] (Counts VI-VII), *i.e.*, the GLI Plan itself, the Verizon/Prudential GSA and the Group Contract; for fraudulent and negligent misrepresentations regarding the existence, terms and/or amount of life insurance benefits provided to Sullivan thereunder (Counts IX-XII); and pursuant to the doctrine of promissory estoppel based upon the purported misrepresentations regarding the existence, terms and/or amount of life insurance benefits provided to Sullivan (Count V), can be construed as colorable claims for benefits pursuant to Section 502(a)(1)(B) of ERISA, as the right plaintiff seeks to enforce with respect to those claims is provided by the GLI Plan, and the terms of the GLI Plan and the instruments under which it operates are relevant thereto.

Moreover, there is no other independent legal duty that is implicated by defendants' alleged actions with respect to those claims. Plaintiff challenges defendants' acts or omissions solely in their capacity as purported administrators and/or fiduciaries under the GLI Plan, *e.g.*, in failing to maintain accurate records; making representations about the amount of life insurance benefits provided to Sullivan pursuant to the GLI Plan; denying plaintiff's claim for the full amount of the benefits due to her as Sullivan's beneficiary under the GLI Plan; failing to provide plaintiff the information she requested, etc., and liability for such acts and omissions would only exist because of defendants' purported administration of the GLI Plan. In other words, with the exception of plaintiff's promissory estoppel claim against Verizon based upon allegations that it entered into a purported settlement agreement with Sullivan in 2011, as set forth below,

---

[22] The purported settlement agreement between Sullivan and Verizon was not attached to the complaint and has not been produced to date; nor does the amended complaint incorporate the terms of that agreement by reference. Accordingly, the amended complaint does not assert a claim for breach of, or tortious interference with, the alleged settlement agreement.

plaintiff's state law claims against defendants either derive from, or require investigation into, the terms of the GLI Plan and the instruments under which it operates, and the amended complaint is bereft of any duty owed to Sullivan and/or plaintiff from any of the defendants with respect to those claims arising independently of ERISA or the terms of the instruments under which the GLI Plan is operated. Accordingly, with the exception of the state law promissory estoppel claim against Verizon based upon its purported 2011 settlement agreement with Sullivan, plaintiff's state law claims are preempted by ERISA. *See, e.g. Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 154-55 (E.D.N.Y. 2014) (dismissing the plaintiff's state law claims seeking damages for, *inter alia*, breach of contract, breach of common law fiduciary duty, fraudulent misrepresentations regarding her entitlement to pension benefits under an employee benefits plan and negligence as preempted by ERISA); *Shearon v. Comfort Tech Mech. Co., Inc.*, 936 F. Supp. 2d 143, 159-60 (E.D.N.Y. 2013) (rejecting the plaintiff's proposed common law claim for breach of fiduciary duty seeking to recover benefits and to enforce rights under ERISA-governed plans as futile because it was preempted by ERISA).

However, plaintiff's state law promissory estoppel claim is not preempted by ERISA to the extent it is based upon allegations, *inter alia*, that in 2011, Verizon, as the successor to the former employer of Sullivan and/or her husband, purportedly agreed to provide Sullivan two (2) life insurance policies, in the amounts of six hundred seventy-nine thousand seven hundred dollars ($679,700.00) and thirty-five thousand dollars ($35,000.00), respectively, of which plaintiff was the intended beneficiary, in order to induce Sullivan to settle her 2005 claim against it alleging that it wrongfully terminated the benefits she had been receiving since February 1998 "under a family plan in [her husband's] name," (Am. Compl., ¶ 104), then failed to secure the

life insurance policies in the amounts promised.  The right plaintiff seeks to enforce with respect to that claim is not provided by the GLI Plan, but by the purported settlement agreement between Verizon and Sullivan that afforded Sullivan benefits to which she did not otherwise have a right under any employee benefit plan.  Since plaintiff's state law promissory estoppel claim based upon the alleged 2011 settlement agreement between Verizon and Sullivan does not "implicate coverage and benefits established by the terms of [an] ERISA benefit plan . . . [it does not] constitute [a] claim for benefits that can be brought pursuant to § 502(a)(1)(B)[.]"  *Montefiore*, 642 F.3d at 331.

Plaintiff's promissory estoppel claim against Verizon based upon the aforementioned allegations also fails to satisfy the second prong of *Davila*, insofar as, if true, they establish a duty owed by Verizon to Sullivan and/or plaintiff, as a purported third-party beneficiary of the alleged settlement agreement, arising independently of ERISA and any ERISA-regulated employee benefit plan.  In other words, it is the alleged promise by Verizon to provide Sullivan with life insurance benefits in certain amounts, upon which Sullivan and plaintiff purportedly detrimentally relied, that plaintiff is seeking to remedy by that promissory estoppel claim; not Verizon's denial of benefits under the GLI Plan or other ERISA-regulated employee benefit plan. *See, e.g. Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56, 60-61 (2d Cir. 2010) (holding that the plaintiff's state law claims were not preempted by ERISA because, *inter alia*, they derived from "a separate promise that reference[d] various benefit plans, none of which directly applie[d] to [the plaintiff] by its terms, as a means of establishing the value of that promise[,] . . . rather than from an ERISA benefits plan, [and] their resolution [did] not require a court to review the propriety of an administrator's or employer's determination of benefits under such a plan.")

Since, with the exception of plaintiff's promissory estoppel claim based upon Verizon's alleged settlement agreement with Sullivan in 2011, plaintiff's state law claims seek, in essence, to rectify a wrongful denial of benefits under an ERISA-regulated plan, and do not attempt to remedy any violation of a legal duty independent of ERISA, they "fall 'within the scope of' ERISA § 502(a)(1)(B), . . . and are therefore completely pre-empted by ERISA § 502 . . . ." *Davila*, 542 U.S. at 214, 124 S. Ct. 2488; *see, e.g. Paneccasio*, 532 F.3d at 114. Accordingly, the branches of defendants' motions seeking dismissal of plaintiff's state law claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as preempted by ERISA are granted to the extent that, with the exception of plaintiff's promissory estoppel claim against Verizon based upon its alleged settlement agreement with Sullivan in 2011, plaintiff's state law claims are dismissed in their entirety with prejudice as preempted by ERISA.

### a. Promissory Estoppel in the ERISA Context ("Count V")

Defendants contend, *inter alia*, that the amended complaint fails to state a claim for promissory estoppel in the ERISA context because the factual allegations do not satisfy the "extraordinary circumstances" element of such a claim. Plaintiff contends, *inter alia*, that since Sullivan "is no longer able to take any action to make up the proceeds that she expected from the life insurance benefits by procuring additional benefits, correcting any error which may exist, or working out alternative financial arrangements with the [plaintiff][,] . . . [there is] a genuine issue of material fact as to whether extraordinary circumstances exist. . . ." (Plf. Opp. at 71).

"A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: (1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the

promise is not enforced." *Weinreb v. Hospital for Joint Diseases Orthopaedic Inst.*, 404 F.3d

167, 172 (2d Cir. 2005) (quoting *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85 (2d

Cir. 2001)). "In order to lessen the danger that commonplace communications from employer to

employee will routinely be claimed to give rise to employees' rights beyond those contained in

formal benefit plans, . . . [the Second Circuit] ha[s] added that an ERISA plaintiff must adduce

not only facts sufficient to support the four basic elements of promissory estoppel, but facts

sufficient to satisfy an extraordinary circumstances requirement as well." *Aramony v. United*

*Way Replacement Benefit Plan*, 191 F.3d 140, 151 (2d Cir. 1999) (quotations, brackets and

citation omitted); *accord Weinreb*, 404 F.3d at 172-73. Since reliance or "injustice" is one of the

four basic elements of a promissory estoppel claim, something more than mere reliance or

"injustice" must be shown to render the circumstances extraordinary. *See Devlin*, 274 F.3d at 86;

*Bell v. Pfizer Inc.*, 499 F. Supp. 2d 404, 409-10 (S.D.N.Y. 2007) ("[A] promise does not, by

itself, rise to the level of extraordinary circumstances simply because an employee relies on it. . .

. Reliance, even reasonably foreseeable reliance, is not enough; to qualify as an extraordinary

circumstance under Second Circuit precedent, [the employer] must have misrepresented [the]

[p]laintiff's eligibility to receive . . . benefits for the purpose of inducing her to [act]."); *Straus v.*

*Prudential Emp. Sav. Plan*, 253 F. Supp. 2d 438, 452 (E.D.N.Y. 2003) ("[T]he facts

demonstrating 'extraordinary circumstances' must go beyond the four prongs of the promissory

estoppel claim- there must be some plus factor beyond a simple showing of reliance on a

promise, harm and injustice.") Extraordinary circumstances have been found where, for

example, an employer makes a promise to an employee in order to induce him or her to take a

particular action for its benefit, only later to renege on that promise. *See Devlin*, 274 F.3d at 86;

*Aramony*, 191 F.3d at 152.

To the extent plaintiff relies upon alleged oral representations by defendants as the basis for her promissory estoppel claim, her claim fails "because oral promises are unenforceable under ERISA and therefore cannot vary the terms of an ERISA plan." *Perreca v. Gluck*, 295 F.3d 215, 225 (2d Cir. 2002); *accord Ladouceur v. Credit Lyonnais*, 584 F.3d 510, 512 (2d Cir. 2009). Thus, "an oral statement purporting to alter the terms of an ERISA benefit plan [is] insufficient to give rise to a claim for promissory estoppel." *Ladouceur*, 584 F.3d at 512.

Moreover, with the exception of plaintiff's promissory estoppel claim against Verizon based upon its purported settlement agreement with Sullivan in 2011, the amended complaint is bereft of any factual allegations from which "extraordinary circumstances" may reasonably be inferred. No factual allegations in the amended complaint suggest that any of the documents allegedly sent by defendants containing the purported promises, *i.e.,* that Sullivan had been provided life insurance coverage in certain stated amounts, were sent in order to induce Sullivan or plaintiff to take any particular action for the benefit of the defendant who sent the particular document,[23] or that there are any other circumstances "beyond the ordinary." *Devlin*, 274 F.3d at 86 (quoting *Aramony*, 191 F.3d at 152). At most, the amended complaint alleges only that certain documents sent to Sullivan and/or plaintiff by defendants contained promises that Sullivan was enrolled in an employee benefits plan providing her with retiree life insurance coverage in the amounts stated therein, and that Sullivan and/or plaintiff relied on those promises to their detriment. Those allegations are insufficient to satisfy the "extraordinary circumstances"

---

[23] Other than Verizon, none of the other defendants stood to gain any benefit from the purported settlement of plaintiff's 2005 claim against Verizon in 2011.

element of a promissory estoppel claim in the ERISA context. *See, e.g. Bell*, 499 F. Supp. 2d at

409; *Berg v. Empire Blue Cross & Blue Shield*, 105 F. Supp. 2d 121, 130 (E.D.N.Y. 2000);

*Pancotti v. Boehringer Ingelheim Pharm., Inc.*, No. 3:06-cv-1674, 2007 WL 2071624, at * 7 (D.

Conn. 2007). Accordingly, the branches of defendants' motions seeking dismissal of plaintiff's

promissory estoppel claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are

granted and plaintiff's promissory estoppel claim ("Count V") is dismissed in its entirety with

prejudice for failure to state a claim for relief, except insofar as it is asserted against Verizon and

based upon allegations that in 2011, Verizon promised to provide Sullivan with life insurance

benefits in certain amounts in order to induce her to settle her 2005 claim against it and reneged

on that promise.[24]

i.      Verizon's Additional Contentions

Verizon further contends, *inter alia*, that "[a] review of the September 22, 2014

determination letter issued by the VCRU concerning [p]laintiff's claim for benefits shows that

the circumstances surrounding the enrollment of Kathleen Sullivan in the Verizon Life Insurance

Plan fall far short of the type of conduct necessary to meet the 'extraordinary circumstances'

required to support a promissory estoppel claim." (Verizon Mem. at 18-19). According to

Verizon, "the facts show that Kathleen Sullivan's enrollment in the [GLI] Plan in 2011 was an

error, and that in any event her enrollment for a death benefit of in excess of a half million

dollars was inconsistent with the benefit levels applicable under the Plan, even if she were

---

[24] Accordingly, plaintiff's claims against Wells Fargo, Xerox and Hewitt are dismissed in their
entirety with prejudice.

entitled to any coverage. Such administrative errors which are inconsistent with the clear and

unambiguous language of the Plan do not constitute 'extraordinary circumstances.'" (*Id.* at 19).

On or about July 22, 2014, plaintiff's counsel sent defendants' attorneys a letter

providing, in relevant part:

> " . . . [P]lease allow this to serve as [plaintiff's] claim for life insurance/benefit
> proceeds as beneficiary of the life insurance policy of Kathleen Sullivan . . . [and]
> a request for plan documents and other documents related to this matter. I request
> that all counsel forward this document to the appropriate Plan Administrator."

(Grande Decl., Ex. 1).

By letter dated September 22, 2014, the VCRU responded to plaintiff's July 22, 2014

claim, in relevant part, as follows:

> "The VCRU . . . is the applicable plan's claims administrator for the claim[] . . .
> [and] has consulted extensively with appropriate Verizon plan fiduciaries and
> their advisors.
>
> . . .
>
> Kathleen Sullivan was employed by New York Telephone and/or other
> predecessor companies and/or subsidiaries of Verizon . . . from May 25, 1970
> through on or about November 14, 1978. During her roughly eight and a half
> years of service, Ms. Sullivan worked in various clerical positions at Verizon
> through her tenure. . . . Ms. Sullivan's annual salary at the time of termination of
> employment was $18,600. . . .
>
> In the late 1970s Ms. Sullivan applied for long term disability benefits under the
> [LTD Plan]. LTD Plan records reflect that Ms. Sullivan was approved for and
> received [LTD benefits] . . . for a period of time through on or about the mid-
> 1980s.[] . . . There is no evidence that that [sic] Ms. Sullivan was receiving LTD
> benefits at the time of her death or for two decades plus prior to her death.
>
> . . .
>
> There is no evidence in any Verizon benefit records that Ms. Sullivan was a
> retiree under any Verizon sponsored plan or that she eligible [sic] to receive a
> disability pension or a service pension.[] . . . Furthermore the claims review unit is

not aware of any Verizon sponsored benefit plan that provides a life insurance benefit to a beneficiary of either a retiree or the beneficiary of a non-retiree in an amount in excess of 35 times the deceased employee's final annual salary.

In 2011, for reasons that are unclear, Kathleen Sullivan was provided with information indicating she was enrolled in the [GLI Plan] . . . . We believe all references to Ms. Sullivan being eligible for or enrolled in such life insurance coverage was in error.

. . . .[Citing various provisions of the SPD for the GLI Plan and the amended Plan document]

At some point there was a coding error as to Ms. Sullivan's annual salary for purposes of benefit calculation. Instead of being coded as $18,600 per year, Ms. Sullivan's final salary was coded as $18,600 per week. . . . The amount of $18,600 multiplied by 52 weeks equals approximately $967,200. This coding error appears to be the root cause of later mistakes by third party administrator, Hewitt . . . which we believe provided Ms. Sullivan with incorrect information about life insurance benefits.

We believe Ms. Sullivan and/or her estate were notified by the Verizon Benefits Center in error that Ms. Sullivan was enrolled in life insurance coverage in amounts of approximately $679,700.

It appears that at some point the Verizon Benefits Center may also have notified Ms. Sullivan and/or her estate that Ms. Sullivan had life insurance coverage in other incorrect amounts. Based on the incorrect benefit coverage calculations, Ms. Sullivan and/or her estate received IRS Form W-2's advising her of imputed income on the incorrectly reported and exceeding [sic] high life insurance coverage. Upon discovering the error of the improperly reported life insurance coverage amount, amended Form W-2's were sent by Wells Fargo to Ms. Sullivan and/or her estate.

The life insurance third party administrator, Prudential, eventually paid out a life insurance death benefit based on the recalculation of the life insurance benefit that would have been due to Ms. Sullivan's beneficiary if Ms. Sullivan had been eligible to participate in that life insurance plan. That life insurance benefit was paid to [plaintiff] and/or her assignee (i.e. James Funeral Home) in or about January 2013 in the amount of approximately $11,400. This was an amount based on the incorrect belief that Ms. Sullivan was a retiree and had life insurance corresponding to her final annual salary of $18,600.

<u>DETERMINATION</u>

Ms. Sullivan never met the eligibility requirements for the life insurance plan in question. Any and all communications over the years that indicated Ms. Sullivan was eligible for life insurance from the Plan were in error.

Assuming for the sake of argument that Ms. Sullivan had been eligible for life insurance benefits from the Plan . . . [t]he $714,700 life insurance amount referenced in the claim letter is wildly disproportionate to Ms. Sullivan's final salary of $18,600. There is noting in the Plan to suggest a retiree's life insurance would be 38 times the former employee's final salary. Clearly there was a substantial error with any communications that advised of life insurance benefits of this amount or anything close to it.

The plan administrator has determined that [plaintiff] was not entitled to receive any benefit under the terms of the Plan, because Ms. Sullivan was not a 'retiree' under the Plan. However, in light of the unfortunate errors noted above, the plan administrator is not interested in trying to recoup the life insurance benefit that was paid to [plaintiff] in the approximate amount of $13,000.

If you wish to have any claim for life insurance benefits in excess of the $13,000 amount . . . reviewed on appeal by the [VCRC] . . ., you may write to the . . . address [provided] no later than 180 days from the date of this letter[.] . . ."

(Grande Decl., Ex. 3 at 2) (emphasis and footnotes omitted). In addition, footnote three (3) of

the VCRU's September 22, 2014 letter indicates, in relevant part:

"Verizon benefit plan records reflect that Ms. Sullivan's husband Joseph Sullivan was also a former employee of Verizon[] . . . [and] had sufficient age and service requirements under the applicable pension plan to be considered pension eligible. . . . Upon the death of Joseph Sullivan, Ms. Sullivan was paid a survivor pension benefit annuity in the amount of approximately $587.93 per month. As the beneficiary of Joseph Sullivan, Ms. Sullivan was paid a life insurance benefit in the amount of approximately $21,000 and a death benefit in the amount of approximately $41,000 . . . ."

(*Id.*)

By letter dated March 20, 2015, plaintiff appealed the VCRU's determination to the

VCRC. (Verizon Am. Mot., Ex. 8). By letter dated June 12, 2015, the VCRC denied plaintiff's

appeal finding, in relevant part, as follows:

". . . Other than your allegations of a 2011 settlement agreement, there is no evidence that there was any such settlement agreement. Verizon conducted an extensive search internally for any such settlement agreement, and we found no such agreement and . . . no mention whatsoever of it. Verizon also asked three separate entities (Hewitt, Xerox and Prudential) to search their records for such a settlement agreement or any reference to it. None of the three entities provided us with anything responsive– no settlement agreement and no record of any reference to it.

The [VCRC] also notes that you contend that the alleged 2011 settlement agreement resulted from a six-year dispute from 2005 to 2011 with Verizon over benefits other than life insurance. The [VCRC] thinks it would be remarkable if a non-life insurance benefits dispute would result in a settlement agreement to provide life insurance coverage in an amount wildly disproportionate to what retiree life insurance would normally be and presumably wildly disproportionate to the amount of the alleged 2005 to 2011 benefits dispute.

Counsel to the [VCRC] . . . has been an ERISA benefits lawyer with Verizon and its predecessor since 1998. And his colleague, . . . has been a benefits lawyer with Verizon for over a decade. . . . They informed the [VCRC] that if there were a 2011 settlement agreement with Ms. Sullivan, they would almost certainly have handled the matter or been significantly involved or have a record of the alleged agreement. They have no records whatsoever of such a 2011 settlement agreement.

Finally, you have not produced a copy of the alleged 2011 settlement agreement.

For these reasons, the [VCRC] has determined that there is no 2011 settlement agreement[] . . . .

. . . The [VCRC] finds [plaintiff's] argument [that 'the "express terms" of the Group Contract entitled [her] to payment of life insurance benefits of $679,700, even if a clerical error occurred[]'] [to be] completely without merit. The sentence immediately prior to the sentence [plaintiff] quote[d] provides, 'The Contract Holder (Verizon) may correct wrong data given to Prudential if Prudential has not been harmed by acting on it.' The clerical error in question with Ms. Sullivan was corrected by Verizon with Prudential, and thus Prudential did not pay the erroneous $679,700 life insurance. The [VCRC] also notes that Ms. Sullivan is not a party to the Prudential Services Agreement, and Section H in question is not intended to confer a benefit on Ms. Sullivan or any potential life

insurance participant.[25]  It is a provision dealing with the correction of data errors and some of the consequences between Verizon and Prudential if such errors are not corrected.  Here the error was corrected.

. . .

. . . The [VCRC] carefully reviewed your claim for promissory estoppel[] . . . [and] notes that there are some circumstances that an ERISA fiduciary such as the [VCRC] confronts that are so compelling that the fiduciary is comfortable approving a claim on that basis.  Your promissory estoppel claim is not one of those situations.  Ultimately the [VCRC] understands that the court will have to rule on this claim, and thus the [VCRC] doesn't believe it appropriate to summarize all of the reasons it believes your promissory estoppel claim should be denied.

The [VCRC] did note, however, that Ms. Sullivan was familiar with Verizon life insurance.  She was the beneficiary of Verizon life insurance, because her late husband was a Verizon retiree. . . . Ms. Sullivan was paid a life insurance benefit in the approximate amount of $21,000 in 2005 when her late husband passed away in 2005.  Verizon records reflect that Joseph Sullivan was making a little over $41,000 when he retired in 1983 from a Verizon predecessor.  Mr. Sullivan was a retiree, while Ms. Sullivan was not.  So the [VCRC] would expect Ms. Sullivan to have a frame of reference for life insurance, and we would expect her to have a reasonable expectation in the neighborhood of no more in life insurance than what she received as the life insurance beneficiary of a retiree.  The $21,000

---

[25]  Section H of the Group Contract provides, in pertinent part:

"Either [Verizon] or Prudential, as they agree, will keep a record of the insured Employees.  It will contain the key facts about their insurance.

At the times set by Prudential, [Verizon] will send the data required by Prudential to perform its duties under the Group Contract, and to determine the premium rates.  All records of [Verizon] . . . which bear on the insurance must be open to Prudential for its inspection at any reasonable time.

Prudential will not have to perform any duty that depends on such data before it is received in a form that satisfies Prudential. [Verizon] may correct wrong data given to Prudential, if Prudential has not been harmed by acting on it.  An Employee's insurance under a Coverage will not be made invalid by failure of [Verizon] . . . , due to clerical error, to record or report the Employee for that insurance."

(Am. Compl., Ex. 2 at 9).

Ms. Sullivan received and the $679,700 that [plaintiff] is seeking are obviously substantially different. The [VCRC] does not believe there could be any reasonable reliance by Ms. Sullivan or by [plaintiff] on a $679,700 number or anything near that amount. Thus, with respect to any communications to Ms. Sullivan or [plaintiff] of life insurance amounts in the $679,700 range, there was no reasonable basis for them to rely on such. . . ."

(Verizon Am. Mot., Ex. 9 at 6-8).

To the extent plaintiff bases her promissory estoppel claim against Verizon on the purported misrepresentations contained in the correspondence sent to her in June 2011 through December 2011 regarding the amount of retiree life insurance coverage provided to Sullivan pursuant to the GLI Plan, those misrepresentations are inconsistent with the unambiguous terms of the GLI Plan regarding who is eligible to receive retiree life insurance benefits and how such benefits are calculated and, thus, rise to the level of mere negligence. "A mistake in the calculation of benefits simply does not rise to the level of bad faith or fraud, and therefore does not constitute extraordinary circumstances[,]" *Casagrande v. Siemens AG*, No. 11 Civ. 5442, 2013 WL 2489933, at * 14 (S.D.N.Y. June 11, 2013), *aff'd*, 556 F. App'x 54 (2d Cir. May 9, 2014), *cert. denied*, 135 S. Ct. 405, 190 L. Ed. 2d 291 (2014) (quotations, brackets and citation omitted); *see also Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 509 (7th Cir. 2011) (holding that negligent misrepresentations by individuals implementing an ERISA plan are insufficient to estop the employer from enforcing the plan's written terms); *Fitch v. Chase Manhattan Bank, N.A.*, 64 F. Supp. 2d 212, 227 (W.D.N.Y. 1999) ("[a]rguments that negligent misrepresentations estop sponsors or administrators from enforcing the plans' written terms have been singularly unsuccessful" (quotations and citation omitted)), particularly where, as here, the Plan documents describing the method for calculating retiree life insurance benefits are not ambiguous. *See, e.g.*

*Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 553-54 (6th Cir. 2012).

Moreover, even assuming, *arguendo*, that plaintiff's conclusory allegations that at some unspecified time in 2011, an unidentified representative of Verizon agreed to provide Sullivan with life insurance benefits in certain amounts in order to induce her to settle her 2005 claim against Verizon for improper termination of her employee benefits, then reneged on that promise, state a plausible claim for promissory estoppel against Verizon, plaintiff's counsel represented to Judge Bianco that Sullivan "did not have the agreement in her possession[,]" (Tr. at 28), and Verizon has been unable to locate a written settlement agreement, or even any reference to any such agreement, in its search therefor.[26] Since no party possesses a written settlement agreement, and "oral promises are unenforceable under ERISA and . . . cannot vary the terms of an ERISA plan[,]" *Perreca*, 295 F.3d at 225; *accord Ladouceur*, 584 F.3d at 512, plaintiff cannot establish a promissory estoppel claim against Verizon as a matter of law. Accordingly, the branch of Verizon's motion seeking dismissal of plaintiff's promissory estoppel claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is converted to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and summary judgment is

---

[26] To the extent plaintiff relies upon the documents sent to Sullivan in 2011 indicating that she was offered two (2) options to receive retiree life insurance benefits in the amounts of approximately six hundred seventy-nine thousand dollars ($679,000.00) and thirty-five thousand dollars ($35,000.00); confirming that she obtained life insurance coverage in the amount of approximately six hundred seventy-nine thousand dollars ($679,000.00) and that plaintiff was a beneficiary thereof; etc., none of those documents make any reference to a settlement of Sullivan's 2005 claim with Sullivan and, in fact, they indicate that the benefits were being provided to Sullivan as a retiree under a Verizon employee benefits plan. As set forth above, the purported "promises" made in those documents, even if relied upon Sullivan and plaintiff, are insufficient to satisfy the "extraordinary circumstances" element of a promissory estoppel claim in the ERISA context.

granted dismissing plaintiff's promissory estoppel claim ("Count V") against Verizon in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure.[27]

III.     CONCLUSION

For the reasons set forth above, (1) defendants' motions to dismiss plaintiff's claims against them pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure are granted to the extent that (a) plaintiff's claims pursuant to Sections 502(a)(3) and 503 of ERISA ("Count II" and "Count III," respectively) are dismissed in their entirety with prejudice for failure to state a claim for relief, (b) plaintiff's Section 502(a)(1)(B) ERISA claim ("Count I") is dismissed with prejudice as against Wells Fargo, Xerox and Hewitt for failure to state a claim for relief, (c) plaintiff's Section 502(a)(1)(A) ERISA claim ("Count IV"), which is not asserted against Wells Fargo, is dismissed with prejudice as against Xerox, Hewitt and Prudential for failure to state a claim for relief, (d) with the exception of plaintiff's promissory estoppel claim based upon Verizon's alleged settlement agreement with Sullivan in 2011 (Count V), plaintiff's state law claims (Counts II and VI-XII) are dismissed in their entirety with prejudice as preempted by ERISA, and (e) plaintiff's promissory estoppel claim ("Count V") is dismissed in its entirety with prejudice for failure to state a claim for relief, except insofar as it is asserted against Verizon based upon its alleged settlement agreement with Sullivan in 2011; (2) the branch of Verizon's motion seeking dismissal of plaintiff's promissory estoppel claim against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is converted to a motion for

---

[27] In light of this determination, it is unnecessary to consider the parties' remaining contentions.

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and summary judgment is granted dismissing plaintiff's promissory estoppel claim ("Count V") against Verizon in its entirety; and (3) defendants' motions are otherwise denied. For the sake of clarity, the following claims remain in this action: (1) plaintiff's Section 502(a)(1)(B) ERISA claim ("Count I") against Verizon and Prudential; and (2) plaintiff's Section 502(a)(1)(A) ERISA claim ("Count IV") against Verizon. There being no just reason for delay, the Clerk of the Court shall enter final judgment dismissing plaintiff's claims against Wells Fargo, Xerox and Hewitt in their entirety pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

SO ORDERED.

                                    _____/s/_____
                                    Sandra J. Feuerstein
                                    United States District Judge

Dated: July 7, 2016
        Central Islip, New York