UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
KRISTINE SULLIVAN-MESTECKY,
individually, and as the beneficiary of the life
insurance policy of KATHLEEN SULLIVAN,
Deceased,

                       Plaintiff,

        -against-

VERIZON COMMUNICATIONS INC., THE
PRUDENTIAL INSURANCE COMPANY OF
AMERICA, WELLS FARGO BANK, XEROX
COMPANY, and AON HEWITT COMPANY,

                      Defendants.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 14-1835 (SJF)(AYS)

**SHIELDS, Magistrate Judge:**

      Plaintiff Kristine Sullivan-Mestecky ("Plaintiff"), individually and as the beneficiary of the life insurance policy of Kathleen Sullivan ("Sullivan"), Plaintiff's now-deceased mother, commenced this action in the Supreme Court of the State of New York alleging various state law causes of action. The action was thereafter removed to this Court on the ground that Plaintiff was alleging federal claims under the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff thereafter filed an amended complaint adding ERISA claims.

      Several rounds of motion practice directed to discovery, motions to dismiss, and for summary judgment followed. After an appeal to the Second Circuit the sole remaining claim is the claim asserted against Verizon for equitable relief pursuant to ERISA Section 502(a)(3). See Mestecky v. Verizon Communications, Inc., 961 F.3 91 (2d Cir. 2020).

      Presently before this Court, upon referral for report and recommendation by the Honorable Sandra J. Feuerstein, are two motions: (1) Plaintiff's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment granting reformation as an equitable

1

remedy on her claim, see Docket Entry ("DE") [158], and (2) Verizon's motion pursuant to Rule 56(d), seeking deferral of a decision on Plaintiff's motion so that the parties can engage in discovery as to Plaintiff's claim. DE [160]. Plaintiff argues that the opinion of the Second Circuit dictates the outcome of her motion and entitles her to judgment. See Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."), at 5,[1] DE [158-1]. Relying on the fact that the Second Circuit ruled only that Plaintiff's claim should not have been dismissed for failure to plead a plausible claim, Defendant disagrees. In particular, Defendant argues that the appellate court left it to the District Court to determine in the first instance, how the equitable avenues that it identified apply to the facts herein.

For the reasons set forth below, this Court respectfully recommends that the Plaintiff's motion for summary judgment be denied without prejudice, and that Defendant's motion for discovery be granted.

## BACKGROUND

I. Facts

The facts set forth below are gleaned from the Court's review of the parties' statements submitted pursuant to Rule 56.1 of the Local Rules of this Court, and documents annexed thereto. The facts recited are generally the same facts set forth in the opinion of the Second Circuit. Unless otherwise noted, they are not in dispute.

---

[1] For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in cases.

A. <u>The Sullivans' Employment With Verizon and Events Prior to 2011</u>

Kathleen Sullivan, Plaintiff's mother, was employed by New York Telephone Company from approximately 1970 through 1978. Response Of Verizon Communications Inc. to Plaintiff's Rule 56.1 Statement of Facts ("Def.'s 56.1") ¶ 2, DE [158-14]. [2] She was married to Joseph Sullivan, who was also employed by New York Telephone Company as well as other predecessor or affiliate companies of Verizon. Those companies are sometimes referred to herein collectively as "Verizon" or the "Company". Joseph Sullivan was a New York management employee who retired on November 26, 1983. While Plaintiff was employed by Verizon's predecessor for approximately eight years prior to suffering a disabling event, her husband Joseph was employed by the Company for more than twenty years. Additionally, his salary was significantly higher than Sullivan's. When Joseph Sullivan passed away in January of 2005, Sullivan's coverage under the Company's health plan and other benefits ended. Def.'s 56.1 ¶ 5. She did, however, receive a death benefit in the amount of approximately $20,000. It appears that after her husband's death Kathleen Sullivan was engaged in a dispute with Verizon as to the continuation of health benefits. See <u>Sullivan-Mestecky</u>, 961 F.3d at 96 (stating that upon the death of Joseph Sullivan, Verizon terminated all of her benefits "which Sullivan challenged over the years").

---

[2]  For ease of reference to undisputed facts, the Court refers only to Verizon's Rule 56.1 statement, which, as required, re-states the facts set forth in Plaintiff's Rule 56.1 statement. Where there is a dispute among facts the Court refers to both parties' Rule 56.1 statements. The Court also refers, where necessary to Verizon's Rule 56.1 additional statement in support of its Rule 56(d) motion.

3

> B. Sullivan's 2011 Enrollment in the Life Insurance Plan and
> Discussions with Hewitt Concerning the Amount of Coverage

In June of 2011, Sullivan contacted the Verizon Benefits Center (the "Center") to seek benefits based upon her own (not her husband's) years of service. Def.'s 56.1 ¶ 6. Hewitt, which administered the Center and acted as Verizon's agent, communicated with Sullivan. Hewitt enrolled Sullivan for life insurance under the Group Life Insurance Plan for New York and New England Associates (the "Plan" or the "Policy") in the amount of $679,700. Def.'s 56.1 ¶ 7. The facts that led to Hewitt's offer to enroll Sullivan in the Plan are nowhere stated. It may be that enrollment was offered in settlement of some claim, but the Court can make no finding with respect to the facts immediately preceding the 2011 enrollment of Kathleen Sullivan in a life insurance policy with a death benefit payment of $679,700.

Plaintiff was named as the beneficiary under the Policy. Def.'s 56.1 ¶ 9. Verizon asserts repeatedly throughout its statement of facts that enrollment at the $679,000 level of coverage was due to a coding error, under which Sullivan's annual compensation of $18,600 when she left the Company was inputted as her weekly compensation. Def.'s 56.1 ¶ 7. This error is stated to have improperly inflated Sullivan's annual compensation and, consequently, the amount of life insurance that the Company offered. Id. Plaintiff does not argue about whether or not Hewitt committed a coding error. Instead, as discussed below, Plaintiff focuses on undisputed communications with Hewitt, during which Hewitt repeatedly told Sullivan that she was indeed entitled to the high level of benefits. Verizon does not dispute that documents before the Court indicate that Hewitt did, in fact, engage in such communications.

The first such communication occurred when Plaintiff was named as beneficiary of her mother's life insurance policy. At that time, Sullivan was sent a "Retirement Enrollment Worksheet" and "Confirmation of Coverage" documents by Hewitt. Def.s' 56.1 ¶ 10. Hewitt

4

records show that on December 19, 2011, Sullivan was told "Okay what I'm showing here, your retiree – retiree life is currently $679,700." Def.'s 56.1 ¶ 14. At that same time, when Sullivan asked about the amount of the life insurance, she was told "[r]ight now it's currently at $679,700." Def.'s 56.1 ¶ 15. The policy amount was reduced in 2012 to $582,600, based upon age-based reductions provisions in the Plan. Def.'s 56.1 ¶ 8.

A Hewitt record of an April 10, 2011 telephone call with Sullivan contains an agent's remark stating "It's an awful lot of life insurance." Def.'s 56.1 ¶ 16. At the same time the agent is recorded as stating "Well your life insurance again they – you know, they confirmed the value is right now $582,600." Def.'s 56.1 ¶ 17. Additional telephone calls were made by Sullivan to Hewitt to confirm the level of coverage. Def.'s 56.1 ¶ 18. Plaintiff asserts that Hewitt's internal records show that on numerous occasions it double checked whether the high level of coverage was correct. Verizon denies that records were double-checked, and explains, as noted above, that the amount of coverage was erroneously based upon a coding error. Def.'s 56.1 ¶¶ 19-20.

The record contains documents reflecting that in July of 2011, Hewitt questioned the level of insurance provided to Sullivan. The undisputed record also indicates that Sullivan engaged in several telephone calls with Hewitt regarding the level of coverage. In particular, a document reflecting a call states: "[t]he ppt wants to know if she would be entitled to retiree life ins[.] pls advise." Def.'s 56.1 ¶ 22. A Hewitt document that appears to be in response to this inquiry states: "can we please confirm that TBA is providing a correct figure? The dollar amount seems high is there a possibility that TBA could be giving a higher figure than what the ppt is eligible for". Def.'s 56.1 ¶ 23. Similarly, another Hewitt document stated "pls clarify the employees 1x pay retiree basic life ins is at $679,700, which seems incorrect," and "per Team Manager request can we please confirm if ppt is getting correct basic life insurance amount?

5

TBA reflects [$679,700] but the number seems to be incorrect for a North Associate." Def.'s 56.1 ¶¶ 25-26. A Hewitt document dated August 1, 2011 states that "after clarification – they state [it] is correct. Closing w[orkf[low]. Def.'s 56.1 ¶ 27.

A review of the parties' Rule 56.1 statements shows there is no dispute that conversations regarding the level of coverage continued into 2012. An April 2012 document states that Sullivan's "ABC [yearly compensation] shows as 970,920.00 Basic Life ins amount shows at $582,600 and it went into effect as of 07/01/2011. Can we please double check that the information is correct and that the ppt is truly eligible for that amount for the life ins policy." Thereafter, a Hewitt document states "SECURED – Retiree life amount is correct." Def.'s 56.1 ¶¶ 29-30. Verizon admits that all cited Hewitt documents exist, and that conversations between Hewitt and Sullivan took place in January and April of 2012, but states that documents are unauthenticated, and their authors are unknown. See Def.'s 56.1 ¶ ¶22-30.

Plaintiff makes factual assertions regarding Sullivan's tax returns for 2011-2012. She states that Sullivan reported taxable income based upon the payment of life insurance premiums for the high level of coverage. Verizon denies these statements because Sullivan's tax records are not part of the record herein. Def.'s 56.1 ¶ 21.

C. Facts Arising After Sullivan's Death

Sullivan passed away on November 17, 2012. Def.'s 56.1 ¶ 31. Two days later, Plaintiff called the Verizon Benefits Center. Plaintiff states that the purpose of the call was to arrange for the release of funds to cover her mother's funeral expenses. Verizon admits only that a call was made to inquire as to benefits. Def.'s 56.1 ¶ 32. Plaintiff was advised by Hewitt that she was a beneficiary of a policy bearing coverage of $582,000. Plaintiff later submitted an assignment of funds providing for the release of $11,380 to a funeral home to cover expenses. Def.'s 56.1 ¶ 33.

6

After the funeral, Plaintiff received a check in the amount of $20, which purportedly represented the amount of the Policy left after payment of the funeral expenses. Def.'s 56.1 ¶ 34. At that time, Verizon told Plaintiff that she was not eligible for any additional life insurance benefit under the Plan. It further stated that if Plaintiff was entitled to any benefit at all, the correct amount, based upon her mother's age and the correct salary when she left Verizon's predecessor, would have been $11,400. Def.'s 56.1 ¶ 35. Verizon denies that its representations to Sullivan regarding her level of life insurance coverage were false, asserting in response to several factual allegations that the $679,700 initial level of coverage (which was later reduced to $582,000 due to Sullivan's age) was due to a coding error. Def.'s 56.1 ¶ 36.

Verizon disputes that it ever made any false statements to Sullivan concerning the level of her life insurance, stating that all such statements were made by Hewitt and not by Verizon. Def.'s 56.1 ¶ 37. It is Verizon's position that given Sullivan's yearly salary of $18,600, and that fact that she only worked for Verizon for 8 and ½ years, Sullivan could not have reasonably believed that she was entitled to retiree life insurance benefits in the amount of $679,700. Def.'s 56.1 ¶ 37. Verizon argues that Plaintiff could not have reasonably believed that she was entitled to such a high level of life insurance because she must have known that life insurance was provided by the Company based upon the employee's annual salary.

Further, Verizon states any argument that it was reasonable for Plaintiff to believe that she was entitled to $679,000 in insurance is belied by the fact that her husband, who worked for the same company for "almost three times the years of service" at a level of compensation which was more than double Sullivan's, was paid a total death benefit of only $21,000. Verizon states that if, as Plaintiff consistently stated to Verizon, her belief was that she was entitled to the "same benefits as her husband" she could not have reasonably believed that based upon her own

7

limited employment history with Verizon, she was entitled to a life insurance policy valued at $679,700- which amount was more than thirty times more that the benefit her husband earned. Id.

II.  Prior Proceedings

As noted, Plaintiff commenced this action against Defendants Verizon and Prudential, as well as Wells Fargo Bank ("Wells Fargo"), Xerox Company ("Xerox"), and Hewitt. The lawsuit was brought in the Supreme Court of the State of New York, County of Nassau, seeking to recover damages under the doctrine of promissory estoppel and for Defendants' purported breach of contract, breach of a third-party beneficiary contract, tortious interference with contractual relations, fraud, breach of fiduciary duty, "illegal evasion of insurance claims," negligent misrepresentation, breach of the covenant of good faith and fair dealing and violations of New York Insurance Law § 4226 and New York General Business Law § 349. On March 21, 2014, Verizon removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446 on the basis, inter alia, that this Court has original jurisdiction under 28 U.S.C. § 1331 and the Employee Retirement Income Security Act of 1974("ERISA"), 29 U.S.C. § 1132. See DE [1]. On September 10, 2014, Plaintiff filed an Amended Complaint against Defendants asserting claims pursuant to Sections 404(a)(1), 502 and 503 of ERISA, 29 U.S.C. §§1104(a)(1), 1132, and 1133, as well as various state law and/or federal common law claims. DE [38].

On July 7, 2016, the District Court granted, inter alia, a motion to dismiss Count II of Plaintiff's Amended Complaint, which alleged breach of fiduciary pursuant to Section 502(a)(3) of ERISA. Sullivan-Mestecky, 2016 WL 3676434 (E.D.N.Y. July 7, 2016); see DE [83] (granting motion), DE [112] (adhering to decision on re-argument) and DE [113] (entry of partial judgment).  Dismissal of that claim was granted on the ground that Plaintiff sought only money

8

damages, and therefore failed to state a claim for equitable relief. Sullivan-Mestecky, 2016 WL WL 3676434 at *24-26. During the pendency of the Rule 12 motions the parties did not engage in discovery. Since Rule 12 motions are directed toward the pleadings the parties did not hold a Rule 26 discovery conference nor submit any discovery plan to the Court. Nor did the Court hold a Rule 16 conference.

After decision was rendered on Defendants' motion to dismiss, the following claims remained: (1) Plaintiff's Section 502(a)(1)(B) ERISA claim against Verizon and Prudential; and (2) Plaintiff's Section 502(a)(1)(A) ERISA claim against Verizon. The parties thereafter began to engage in pretrial proceedings, and litigated a dispute as to the scope of permissible discovery. Plaintiff sought discovery outside of the administrative record; Defendants denied that such discovery was appropriate. On January 23, 2017, this Court denied Plaintiff's discovery motion, holding that in the context of the remaining claims there should be no discovery beyond the administrative record. Sullivan-Mestecky, 2017 WL 9480893 (E.D.N.Y. January 23, 2017); see DE [113] (decision denying discovery); Sullivan-Mestecky, 2017 WL 3172818 (E.D.N.Y. July 26, 2017); DE [138] (overruling Plaintiff's objections to decision). However, this Court allowed the parties to engage in a voluntary exchange of information as agreed. DE [115-116].

Defendants Verizon and Prudential (the only defendants remaining in the litigation at that time) thereafter moved for summary judgment as to the remaining causes of action -- those asserted pursuant to ERISA Section 502(a)(1)(B). Those motions were referred to this Court for Report and Recommendation. On March 5, 2018, this Court recommended that Defendants' motions for summary judgment be granted. Sullivan-Mestecky, 2018 WL 2422678 (E.D.N.Y. March 5, 2018); DE [139]. On May 16, 2018, the District Court adopted that decision. Sullivan-Mestecky, 2018 WL 2229140 (E.D.N.Y. May 16, 2018). Since the last summary judgment

9

decisions disposed of the claims remaining after the District Court's earlier dismissal of various other claims, final entry of judgment in favor of Defendants followed. See DE [145] and Clerk's Entry of Final Judgment dated May 16, 2018.

Once final judgment was entered, Plaintiff appealed both the July 2017 dismissal of her claims against Verizon and Prudential pursuant to ERISA Section 502(a)(3)(as to which partial judgment was earlier entered) as well the May 2018 dismissal of her remaining ERISA claims, those asserted pursuant to Section 502((a)(1)(B). While the Second Circuit affirmed dismissal of Plaintiff's Section 502(a)(1)(B) claims against both appealing Defendants, and her Section 502(a)(3) claim against Prudential, it reversed the dismissal of Plaintiff's Section 502(a)(3) claim against Verizon. See Sullivan-Mestecky v. Verizon Communications Inc., 961 F.3d 91, 91 (2d Cir. 2020). The judgment as to that claim was vacated and the case was remanded for further proceedings consistent with the decision of the appellate court. Id. at 105.

## DISCUSSION

A.  Legal Principles

   1.  Plaintiff's Summary Judgment Motion: Rule 56(a)

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to establish the lack of any factual issues. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, the requirement is that there be no "genuine issue of material fact." Id. at 248. When considering a motion for summary judgment, the Court must draw all inferences from the underlying facts in

the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Moreover, the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' ... because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." Maco v. Baldwin Union Free Sch. Dist., 2017 WL 1373425, at * 3 (E.D.N.Y. April 13, 2017) (citing Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Id.

2. Reformation

When vacating the judgment dismissing Plaintiff's claim against Verizon for violation of ERISA Section 502(a)(3), that Court held that Plaintiff properly pled a cause of action for equitable ERISA relief pursuant to three separate theories: estoppel, surcharge and reformation. Plaintiff moves for summary judgment only pursuant to the theory of reformation. The Court turns to discuss the elements of that claim.

Courts have the discretionary equitable power to reform contracts. See Osberg v. Foot Locker, Inc., 862 F.3d 198, 206 (2d Cir. 2017) (noting that review of a decision to reform a contract is for abuse of discretion or clear error of law); Amara v. CIGNA Corp., 775 F.3d 510,

11

519 (2d Cir. 2014). Where, as here, a party seeks to reform an ERISA contract, the Court is guided by federal common law, and not the law of any particular state. Amara, 775 F.3d at 526. Under that law, "when a party induces assent to a writing by fraud or intentional misrepresentation", a court may reform the contract "to reflect the terms as represented to the innocent party." Id. at 528. In the ERISA context, courts have allowed the reformation of plans where the conduct of the company defendant intentionally misled plan participants into believing the wrong information about their retirement benefits. E.g., Osberg v. Foot Locker, Inc., 862 F.3d 198 (2d Cir. 2017); Amara, 775 F.3d 510 (2d Cir. 2014). In such cases, courts have reformed the pension plan at issue to reflect participants' beliefs about the benefits to which they were entitled. E.g., Osberg, 862 F.3d at 215.

Relevant to this case, a contract may be reformed "where one party is mistaken and the other commits fraud or engages in inequitable conduct. See Sullivan-Mestecky, 961 F.3d at 103. A party alleging that they made a mistake "for purposes of granting reformation requires a showing that a party entered a contract 'in ignorance or mistake of facts material to its operation.'" Id. at 528 (citation omitted). There is no doubt that Plaintiff was mistaken about the level of insurance available to her under the Policy. Turning to the second element, it is for Plaintiff to prove that "defendants committed fraud or similar inequitable conduct and that such fraud reasonably caused [Sullivan and/or Plaintiff] to be mistaken about the terms of the pension plan." Amara, 775 F.3d at 526. Fraud sufficient to dictate reformation consists generally of "obtaining an undue advantage by means of some act or omission which is unconscientious or a violation of good faith." Amara, 775 F.3d at 526.

A plaintiff seeking the remedy of reformation pursuant to Section 502(a)(3) of ERISA need not show detrimental reliance. Osberg, 862 F.3d at 212. However, there is an element of

12

"reasonableness" to the equity court's concern. In particular, reformation is appropriate where defendant's fraud or similar inequitable conduct "reasonably caused plaintiffs to be mistaken" about the terms of a pension plan." Amara, 775 F.3d at 526; see Sullivan-Mestecky, 961 F.3d at 103 (noting that under appropriate factual circumstances a plaintiff may reasonably, but mistakenly believe that the contract at issue is in accord with her belief). Thus, while a showing of detrimental reliance is unnecessary, a plaintiff must nonetheless show that "fraudulent statements or omissions 'materially ... affected the substance of the contract,' and that the mistaken party not be so grossly negligent such that its conduct "f[e]ll below a standard of reasonable prudence". Osberg, 862 F.3d at 212.

The level of proof required for the remedy of reformation is high. Thus, a plaintiff seeking reformation "must show by clear and convincing evidence" that they "entered a contract 'in ignorance or mistake of facts material to its operation.'" Osberg, 862 F.3d at 213.

3. Standard Applicable to Defendant's Motion: Rule 56(d)

A party may oppose summary judgment on the ground that it needs additional discovery in order to defeat the motion. Fed. R. Civ. P. 56(d). A party seeking to resisting summary judgment on this ground must submit an affidavit pursuant to Rule 56(d) (formerly Rule 56(f)), showing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Hudson River Sloop Clearwater, Inc. v. Department of the Navy, 891 F.2d 414, 422 (2d Cir. 1989); Hanson v. New York City, 2018 WL 1513632, at *22 (E.D.N.Y. Mar. 27, 2018), see also Lunts v. Rochester City Sch. Dist., (internal citations omitted). Failure to file an affidavit explaining the need for additional discovery "is itself sufficient grounds to reject a claim that the opportunity for

13

discovery was inadequate." Id. Lunts v. Rochester City School District, 515 Fed App'x 11, 13-14 (2d. Cir. 2013) (affirming denial for Rule 56(d) discovery where affidavit "contained only conclusory allegations of incomplete discovery" and failed to identify "any potentially discoverable evidence that would have raised a genuine issue of material fact"); see also Alphonse Hotel Corporation v. Tran, 828 F.3d 146,151-52 (2d Cir. 2016) (affirming denial of additional discovery under Rule 56(d) where affidavit submitted in support failed to explain affiant's "basis for believing that these documents exist" as "[s]uch bare, generalized assertions cannot justify delaying the resolution of a summary judgment motion"); Seneca Beverage Corp. v. Healthnow New York, Inc., 200 F. App'x 25, 27 (2d Cir. 2006).

Failure to seek discovery when such discovery was available is also reason to deny a request for discovery to defeat a motion for summary judgment. Thus, where a defendant makes a strategic choice to forego discovery early in litigation, they may not later seek discovery in order to defeat summary judgment. See Marin v. Apple-Metro, Inc., 2020 WL 6157011, at *4-5 (E.D.N.Y. October 21, 2020); Markets Grp., Inc. v. Oliveira, 2020 WL 820654, at *4 (S.D.N.Y. Feb. 3, 2020).

II.   Disposition of the Motions

    1.   Disposition of the Motions

    A.   The Parties' Positions

Plaintiff interprets the opinion of the Second Circuit to require entry of judgment in her favor reforming the Plan to pay the $679,000 death benefit. For its part, Verizon argues that the Second Circuit held only that Plaintiff plausibly pled a claim for equitable relief – not that she was entitled to all relief sought in the Amended Complaint. In support of its argument, Verizon notes that the appeal (to the extent it was directed to Section 502(a)(3) of ERISA) was an appeal

14

of a motion to dismiss, and was therefore directed only to the sufficiency of the pleadings. Verizon argues that when the Second Circuit vacated and remanded the Section 502(a)(3) claim for further proceedings consistent with its decision, it dictated only that the District Court allow the vacated claim to proceed past the pleadings stage, not directly to entry of judgment in favor of Plaintiff. As further discussed below, Verizon seeks discovery to defend itself against the reformation claim. Plaintiff argues that such discovery is sought too late and is, in any event, unnecessary.

        B.    <u>Plaintiff's Motion is Denied and Defendant's Motion is Granted</u>

Before proceeding to decision, it is important to note that the decision of the Second Circuit in this matter confirms that Hewitt was Verizon's agent, and that Hewitt's actions are therefore properly imputed to Verizon. <u>Sullivan-Mestecky</u>, 961 F.3d at 104. Therefore, Verizon's counterstatement of facts asserting that documents were sent by Hewitt, and not by Verizon is immaterial to the issue of imputed liability for Hewitt's acts. To the extent that there was a breach of duty, Verizon cannot escape liability based upon the notion that contact with Sullivan was made by Hewitt, and not by Verizon.

While the Court therefore notes that Hewitt's statements bind Verizon, it nonetheless agrees with Verizon that the Second Circuit held only that Plaintiff plausibly pled facts sufficient to state a claim for reformation, and not that she was entitled to prevail. For example, that Court noted that:

> Sullivan-Mestecky has <u>adequately pled</u> that Verizon committed equitable fraud by misrepresenting that Sullivan was entitled to a life insurance policy in the amount of $679,000. As a result of Verizon's fraudulent representations, Sullivan reasonably but mistakenly expected that Sullivan-Mestecky would receive the generous death benefits. Sullivan-Mestecky <u>has thereby adequately pled</u> circumstances that would permit the district court to equitably reform the terms of her plan with Verizon, sufficient to bind Verizon to its fraudulent representations.

> Reforming the plan to accord with Sullivan's reasonable expectations is an appropriate equitable remedy."

Sullivan-Mestecky, 961 F.3d at 103 (emphasis added).

While the Second Circuit repeatedly characterized Verizon's conduct as sufficient to state a claim for reformation, it may not have annexed the terms "adequately pled" to each sentence describing the facts as stated by Plaintiff. Nonetheless, it is clear from the procedural posture of the case that every statement regarding the facts herein was made in the context of the Second Circuit's review of a motion to dismiss. The reversal of the Court's grant of that motion means only that the Second Circuit held that a plausible claim for reformation was pled – not that all the facts pled are necessarily true, or that Plaintiff is entitled to the relief she sought. Like any other case, it is an impermissible leap to move directly from holding that Plaintiff states a claim for relief directly to an award of all relief sought in the complaint. Indeed, if Plaintiff's result was dictated by the appellate decision, that Court could simply have directed this Court to enter judgment reforming the Plan to award the death benefit sought, and not for further proceedings consistent with its opinion. See 961 F.3d at 105.

Still, Plaintiff notes - correctly - that the facts she alleges regarding Verizon's repeated statements as to the level of life insurance coverage are not disputed. She therefore argues that she is entitled to reformation. Opposing Verizon's Rule 56(d) motion, Plaintiff notes that when she sought discovery, it was Defendant that resisted discovery beyond the administrative record – a position adopted by this Court. She argues, in effect, that what is good for the goose is good for the gander. This may well be, however, when Defendant resisted expansion of discovery it was in the context of a claim under Section 502(a)(1)(B) of ERISA, and not in the context of a claim for equitable reformation pursuant to Section 502(a)(3). Since the claim now being litigated was already dismissed, Verizon could not have sought discovery as to facts necessary to

16

defend against a claim for reformation. The Court therefore rejects any argument that Verizon should have sought discovery earlier in this litigation, or that it is somehow bound by its earlier position resisting discovery.

As to the notion that the admission of statements made by Hewitt requires entry of judgment in Plaintiff's favor, the Court disagrees. While Verizon does not dispute such facts, Hewitt's statements, standing alone or together and construed in the light most favorable to Verizon, do not necessarily require reformation of the Plan. Moreover, as a court of equity, this Court must consider all facts and circumstances to determine what is fair. The question then arises: what more could be developed in discovery to assist the Court, and allow Verizon to defend itself against reformation? What additional facts must this Court know before awarding the remedy of reformation?

Those facts are the substance of Verizon's Rule 56(d) motion. In support thereof, Verizon submits an attorney affidavit outlining discovery that it seeks. Specifically, Verizon seeks to take the deposition of Plaintiff and discovery of documents. The deposition of Plaintiff will allow Verizon to question her about any conversations she had with her mother, Hewitt or Verizon during the time when Sullivan was enrolled in the Plan or thereafter. DE 158-1 17(A)-(D). Documents from third parties may also shed light on Sullivan's understanding of benefits. Further, it appears that Sullivan may have been enrolled in the Plan after engaging in negotiations regarding coverage that ceased after the death of her husband. She may have been giving up some right when accepting that insurance. It is impossible to know this without the benefit of discovery. Verizon will also be able to discover whether Plaintiff is in possession of any documents regarding conversations as to coverage under the Plan. This discovery may reveal

information regarding Sullivan's understanding and questions regarding coverage. It is well within the scope of discovery concerning Plaintiff's claim for reformation.

In sum, Verizon's affidavit states facts it seeks to discover which go to the issue of whether Sullivan was reasonably mistaken about the level of benefits payable under the plan. This is not the same inquiry as detrimental reliance – which is not necessary for Plaintiff to show. Instead, it is an inquiry aimed at application of an objective standard necessary to allow a court of equity to determine whether to reform a contract. Put simply, the discovery sought is relevant to the issue of whether Sullivan "reasonably but mistakenly expected that [she] would receive the generous death benefits." Sullivan-Mestecky, 961 F.d at 103. Moreover, the discovery Verizon seeks is within the scope of any claim for estoppel or surcharge– the two other equitable theories identified by the Second Circuit. While Plaintiff has not moved pursuant to those theories, she has not indicated her abandonment thereof.

Courts are vested with broad discretionary authority to grant equitable relief to ERISA plan participants. See Amara v. CIGNA Corp., 113 S. Ct. 1879 (2011). That power must be exercised to ensure fairness to both parties. It is only when all facts are discovered that the Court will be in a position to rule.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment, appearing as Docket Entry No. 158 herein, be denied. This Court further recommends that Defendant Verizon's motion pursuant to Rule 56(d), appearing as Docket Entry No. 160 herein be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       December 29, 2020

                                           /s/ Anne Y. Shields
                                           Anne Y. Shields
                                           United States Magistrate Judge